FILED

2010 MAY 27  PM 2: 51

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

1  JULIA SOROKIN, Pro Se
   LOUIS A. BRAVO, Pro Se
2  3895 Clairmont Drive, Suite B#210
   San Diego, CA 92117
3  Telephone: (858) 384-3528
   Facsimile: (858) 384-3581
4

5  Plaintiffs, Pro Se

6

7

8

9

10              UNITED STATES DISTRICT COURT

11            SOUTHERN DISTRICT OF CALIFORNIA

12

13  PLAINTIFF(s)                    )   '10 CV 1153 WQH    BLM
                                    )
14                                  )
    JULIA SOROKIN, LOUIS A. BRAVO   )   COMPLAINT UNDER THE CIVIL RIGHTS
15                                  )   ACT 42 U.S.C. § 1983, FOR INJUNCTIVE
                v.                  )   AND OTHER RELIEF
16                                  )
17  DEFENDANT(s)                    )
                                    )   JURY TRIAL DEMANDED
18  NEW YORK COUNTY DISTRICT        )
    ATTORNEY'S OFFICE; Cyrus Vance Jr. )
19  in his official capacity as DISTRICT )
    ATTORNEY OF NEW YORK COUNTY;    )
20  Robert Morgenthau in his former official )
    capacity as DISTRICT ATTORNEY OF )
21  NEW YORK COUNTY; Joanne Siegmund )
    in her official capacity as ASSISTANT )
22  DISTRICT ATTORNEY OF NEW YORK   )
    COUNTY; CITY OF NEW YORK;       )
23                                  )
    NEW YORK CITY POLICE DEPARTMENT; )
24  Terrance Hayes in his official capacity as )
    NYPD Detective; CORRECTIONS     )
25  DEPARTMENT OF NEW YORK CITY;    )
    NEW YORK STATE ATTORNEY         )
26  GENERAL'S OFFICE                )
27                                  )
    _____)
28
                        Page 1 of 67

VIA FAX



**PRELIMINARY STATEMENT**

1. This action is brought pursuant to 42 U.S.C § 1983 to redress violations of constitutional rights as secured by the U.S. Constitution to both Plaintiffs Julia Sorokin and her husband Plaintiff Louis A. Bravo under color of law by the Defendants named in this complaint.

2. Both Plaintiffs Julia Sorokin and Louis A Bravo of San Diego, California sue all Defendants and their employees named in this complaint for an injunction and damages. This action is brought pursuant to 42 U.S.C § 1983 due to the fact that all of the Defendants and their employees named in this complaint as Defendants have engaged in violations of constitutional rights as secured by the U.S. constitution, by authorizing actions in this judicial district or by having employees from their agency or departments physically present in this judicial district acting under color of law during the false arrest, unlawful three week prison detention without stating charges, and the unlawful extradition to New York State of Plaintiff Julia Sorokin a San Diego, California resident on a sealed governor's warrant.

3. The Defendants named in this complaint were acting individually or jointly and in conspiracy, and out of the scope of their employment as well as acting under color of law when they falsely arrested Plaintiff Julia Sorokin at her home at 101 Market St. San Diego, California over a civil business website domain name dispute and charged her with aggravated identity theft in New York.

4. The Defendants at the District Attorney's Office of New York County and Defendant NYPD Detective Terrance Hayes had the Plaintiff Julia Sorokin arrested on the false charges of aggravated identity theft to assist the Dow Jones and Co. and the Wall Street Journal take over the Plaintiff Julia Sorokin's publishing company.

5. The Defendants at the District Attorney's Office of New York County and Defendant NYPD Detective Terrance Hayes filed a false police report with no victims and proceeded to conduct an out of state / jurisdiction kidnapping of the Plaintiff Julia Sorokin to bring her to New York City, NY in order

to convict her as a New York resident even though she has not committed a crime in New York City, NY nor is the Plaintiff Julia Sorokin a New York State resident.

6. The chief architect of this malicious prosecution and kidnapping under color of law, the Defendant Former District Attorney Robert Morgenthau has since retired after 35 years of public service, and secured a position with Wachtell, Lipton, Rosen & Katz. This law firm provides legal counsel to the Bancroft family, who are the original owners of the Dow Jones & Co. Inc and the Wall Street Journal.

7. The Defendant, Former District Attorney Robert Morgenthau, acting in conspiracy and under color of law utilized the assistance of all of the other Defendants named in this complaint as well as the U.S. Marshall's Office and the San Diego County Sheriff's Department to conduct this out of state / jurisdiction kidnapping of the Plaintiff Julia Sorokin in order to secure a position with Wachtell, Lipton, Rosen & Katz as well as assist the Dow Jones and Co. The Defendant, Former District Attorney Robert Morgenthau, was a frequent writer for The Wall Street Journal and received many political endorsements from The Wall Street Journal in his thirty five years in office.

## JURISDICTION AND VENUE

8. The primary conduct complained of herein occurred in San Diego County, California. This Court has jurisdiction over this action under the provisions of 18 U.S.C. §1332(a) in that this is an action between citizens of different states in which the value of the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Venue is proper in this district pursuant to 28 U.S.C. §1331 (federal question of jurisdiction); and 18 U.S.C. §1332, diversity.

10. Plaintiffs Julia Sorokin and Louis A. Bravo reside in San Diego, California.

11. All Defendants reside in New York State and are employed or were formerly employed in New York State during the time of the alleged civil rights violations done to both Plaintiffs.

12. All acts necessary or precedent to the bringing of this lawsuit occurred in this judicial district due to the fact that all of the Defendants and their employees named in this complaint as Defendants have engaged in violations of constitutional rights as secured by the U.S. constitution, by authorizing actions in this judicial district or by having employees from their agency or departments physically present in this judicial district acting under color of law during the false arrest, unlawful three week prison detention without stating charges, and the unlawful extradition to New York of Plaintiff Julia Sorokin a San Diego, California resident on a sealed governor's warrant.

13. This action is brought pursuant to 42 U.S.C § 1983 to redress the deprivation of rights secured by the United States Constitution under color of law.

14. This court has jurisdiction pursuant to 28 U.S.C. § 1331.

15. Rule 65 of the Federal Rules of Civil Procedure authorizes injunctive relief.

16. Venue is proper under 28 U.S.C. § 1391 (a) (2).  A substantial part of the events giving rise to the claim occurred in the Southern District of California.


## THE PARTIES

17. Plaintiff Julia Sorokin is a California resident that has resided in San Diego, California and Los Angeles, California for over twelve years. Plaintiff Julia Sorokin has been legally married to Plaintiff Louis A. Bravo and has shared a home and income for over fifteen years.

18. Plaintiff Louis A. Bravo is a California resident that has resided in San Diego, California and Los Angeles, California over twelve years. Plaintiff Louis Bravo has been legally married to Plaintiff Julia Sorokin and has shared a home and income for over fifteen years.

19. The New York State Attorney General's Office is named in this complaint as a Defendant for issuing a governor's extradition warrant upon request from the District Attorney's Office of New York County for the Plaintiff Julia Sorokin without verifying whether the Plaintiff Julia Sorokin was actually a fugitive from New York State or if the indictment no: 5257/08 was legally sufficient or valid to authorize an extradition.

20. City of New York is named in this complaint as a Defendant for the civil rights violations under color of law committed against the Plaintiff Julia Sorokin by members of the New York City Police Department and the New York City Corrections Department.

21. The New York City Police Department (NYPD) is named in this complaint as a Defendant for the civil rights violations under color of law committed against the Plaintiff Julia Sorokin by NYPD Defendant Detective Terrance Hayes and others employees as of yet not identified.

22. The New York City Department of Corrections is named in this complaint as a Defendant for the civil rights violations under color of law committed against the Plaintiff Julia Sorokin during her unlawful detention at the Rikers Island Correctional Facilities in Queens, New York.

23. NYPD Detective Terrance Hayes assigned to the District Attorney's Office Squad (DAOS) is named as a Defendant in this complaint for the civil rights violations and malicious investigation under color of law committed against the Plaintiff Julia Sorokin. NYPD Detective Terrance Hayes was the lead detective in the false arrest and kidnapping of the Plaintiff Julia Sorokin from her home at 101 Market Street San Diego, California.

24. The New York County District Attorney's Office is named in this complaint as a Defendant for the civil rights violations, malicious investigation, and malicious prosecution under color of law committed against the Plaintiff Julia Sorokin. The District Attorney's Office jurisdiction is coextensive with the island of Manhattan in New York State.

25. Former District Attorney of New York County Robert Morgenthau is named in this complaint as a Defendant for the civil rights violations, malicious investigation, and malicious prosecution under color of law committed against the Plaintiff Julia Sorokin.

26. District Attorney of New York County Cyrus Vance Jr. is named in this complaint as a Defendant for the continuation of the malicious prosecution under color of law committed against the Plaintiff Julia Sorokin.

27. Assistant District Attorney of New York County Joanne Siegmund is named in this complaint as a Defendant for the civil rights violations, malicious investigation, and malicious prosecution under color of law committed against the Plaintiff Julia Sorokin.

28. Each Defendant is sued in his or her current or former official capacity, and each acted under color of law and conspiracy within the scope of his or her current or former employment in engaging in the actions alleged in this complaint.

**STATEMENT OF FACTS**

29. On May 31st 2008, the Defendants at the District Attorney's Office of New York County and Defendant NYPD Detective Terrance Hayes filed a false police report with the assistance of the Law Offices of Martin Schwimmer and the Dow Jones & Co.

30. This police report was filed in the NYPD 5th police precinct across the street from the District Attorney's Office of New York County in order to assist the Law Offices of Martin Schwimmer and his client the Dow Jones & Co. gain an advantage over the Plaintiff Julia Sorokin, a California publishing business owner who was having a website domain dispute with the Law Offices of Martin Schwimmer and the Dow Jones & Company Inc..

31. On March 5th , 2008, the Dow Jones & Company Inc. the parent company of the Wall Street Journal, with the assistance of the Law Offices of Martin Schwimmer fraudulently had just taken over all of the Plaintiff Julia Sorokin's business website urls and emails in California without her knowledge and The Wall Street Journal was about to launch their new magazine WSJ Magazine after stealing the idea from Plaintiff Julia Sorokin's California magazine called WSJ Media.

32. On or about May 15th , 2008, The Dow Jones & Company Inc. and the Law Offices of Martin Schwimmer used their connection with the Defendant Robert Morgenthau, the former District Attorney of New York County to destroy the character and frame the Plaintiff Julia Sorokin so that she would not be able to file a civil lawsuit against the Dow Jones & Company Inc and the Wall Street Journal for the stealing her business idea and her website urls and business emails.

33. The Dow Jones & Company Inc. and the Law Offices of Martin Schwimmer had a direct connection with the Defendant Robert Morgenthau, the former District Attorney of New York County due to the fact he was a frequent writer for The Wall Street Journal and received many political endorsements from The Wall Street Journal in his thirty five years in office.

34. The District Attorney's Office of New York County under the direction of the Defendant Robert Morgenthau and acting under conflict of interest, color of law and conspiracy, ordered both Defendant ADA Joanne Siegmund and Defendant NYPD Detective Terrance Hayes and other staff members to start a malicious criminal investigation of Plaintiff Julia Sorokin, a California resident and business owner for the non existing crimes of owning website urls and business emails that are similar to the Wall Street Journal newspaper. This action turned a civil domain name dispute into a malicious felony police investigation.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### The Missing False Police Report

35. The police report that was filed accusing the Plaintiff Julia Sorokin of false crimes has since gone missing by the Defendants at the District Attorney's Office of New York County. By conducting a six month investigation, the Plaintiffs have discovered the following criminal acts conducted by the Defendants at the District Attorney's Office of New York County and Defendant NYPD Detective Terrance Hayes:

1. The police report states no victims of a crime only PSNY (Penal Statue New York).

2. The police report was filed by the Defendants at the District Attorney's Office of New York County and Defendant NYPD Detective Terrance Hayes and attorney Martin Schwimmer, who was not a victim of a crime or a witness to a crime, making this a false police report.

3. The police report states that the crime happened at 9:00 AM May, 31st 2008.

4. The police report also states the complaint was filed at 9:00 AM May, 31st 2008.

5. The police report states the location of the alleged crime happened in a commercial building in New York City, but does not give the address of this commercial building.

6. The police report was filed across the street from the District Attorney's Office of New York County building.

7. The police report has disappeared after the Plaintiffs requested it from the Defendant ADA Joanne Sigmund during pre-trial discovery.

- A copy of the Plaintiff Julia Sorokin's New York City Police arrest report proving the filing of a false police report is attached as Exhibit A.

///

///

///

**Defendant NYPD Detective Terrance Hayes Actions Under Color of Law**

36. After several months of illegal searches of bank accounts and emails without a search

warrant, the Defendant NYPD Detective Terrance Hayes failed in finding any way to tie the Plaintiff

Julia Sorokin to a crime in New York City and decided to charge the Plaintiff Julia Sorokin with the

false crime of aggravated personal identity theft of newspapers, for owning website urls and business

emails that are similar to the Wall Street Journal and the New York Times. Both newspapers were

publishing vendors of the Plaintiff Julia Sorokin's publishing company in California.

37. Since he could not locate the Plaintiff Julia Sorokin home address in California, Defendant

NYPD Detective Terrance Hayes then left his jurisdiction with a plan to deceive the Plaintiff Julia

Sorokin's parents into giving up the Plaintiff Julia Sorokin's contact information in California with a

false story that a Bank of America employee has stolen the Plaintiff Julia Sorokin's personal

identification and is cashing checks in New York City with Plaintiff Julia Sorokin's identification and

he is there to inform the Plaintiff Julia Sorokin of the crime being done against her.

38. The Plaintiff Julia Sorokin's elderly parents told the Defendant NYPD Detective Terrance

Hayes that the Plaintiff Julia Sorokin will contact him regarding this situation and gave the Detective

the Plaintiff Julia Sorokin's contact information so he can follow up on the situation with her.

39. When Plaintiff Julia Sorokin called Defendant NYPD Detective Terrance Hayes the next

day, from her cell phone in San Diego, California, Defendant NYPD Detective Terrance Hayes told her

the same false story of a lady at Bank of America stealing her personal identification.  He said he went

to her parents' home to inform her of this crime of identity theft being done against her.

40. Plaintiff Julia Sorokin then asked Defendant NYPD Detective Terrance Hayes if she was in

any trouble and if she needs to come to New York City with her attorney. Defendant NYPD Detective

Terrance Hayes told Plaintiff Julia Sorokin that she does not need to come to New York City and that

1  she is not in any trouble at all.  He said he is in the process of tracking down this criminal who is using

2  Plaintiff Julia Sorokin's personal identification and he is sure he will catch "this criminal".

3      41. Defendant NYPD Detective Terrance Hayes instructed Plaintiff Julia Sorokin not to come to

4  New York City or to seek legal representation so that he can entrap her and make her look like a

5

6  fugitive from New York City, NY. He did this in order to strengthen his false arrest case since he had

7  no jurisdiction in California.

8      42. Defendant NYPD Detective Terrance Hayes needed to provide the Defendants at the

9  District Attorney's Office of New York County with a method to kidnap the Plaintiff Julia Sorokin to

10  New York City to face false charges and make her look like a fugitive on the run from New York.

11

12

13              **The Defendants at the District Attorney's Office of New York County of**

14                         **New York County Deceive the Grand Jury**

15      43. Defendant ADA Joanne Siegmund at this same time is working with other members of the

16  District Attorney's Office of New York County and the attorney Martin Schwimmer who was

17  representing the Wall Street Journal in order to get a felony indictment from the Grand Jury of New

18  York City for the Plaintiff Julia Sorokin, a California resident.

19      44. Attorney Martin Schwimmer, representing the Wall Street Journal, was used in place of a

20  victim of aggravated personal identity theft in front of the Grand Jury by stating he was representing

21

22  the victims of aggravated personal identity theft in New York.  This tactic was used under the color of

23  law, in order to deceive the Grand Jury and secure the indictment / arrest warrant, against the Plaintiff

24  Julia Sorokin.

25      45. This is a major act of prosecutor misconduct, corruption, as well as conflict of interest. The

26  acts of presenting false and fabricated evidence and witnesses to a Grand Jury are felony crimes.

27

28                             Page 10 of 67

46. After being presented with fabricated evidence and false testimony by attorney Martin Schwimmer, the Grand Jury granted the felony indictment for Grand Larceny, Forgery, and Aggravated Identity Theft to the Defendants at the District Attorney's Office of New York County for Plaintiff Julia Sorokin.

47. Defendant Robert Morgenthau then requested a governor's extradition warrant from the Defendant the New York State Attorney General's Office, this warrant was then sealed.

48. He did this so that Plaintiff Julia Sorokin could be kidnapped under color of law from her home at 101 Market Street San Diego, California without knowing her charges and forcing her to waive her rights to extradition in order to come to New York City to face false charges. The warrant number is F2008100586.

49. Defendant NYPD Detective Terrance Hayes is then given the full authorization and funding to kidnap the Plaintiff Julia Sorokin to make her look like a fugitive who was running from New York, in order to satisfy the lack of jurisdiction that the Defendants at the District Attorney's Office had over a California resident.

**The Police Misconduct and Civil Rights Violations of the San Diego Sheriff's Dept.**

50. The Defendant NYPD Detective Terrance Hayes under color of law contacts Detectives Julio Sandoval and Carlos Vasquez of the San Diego, California Sheriff's Office fugitive recovery division to assist in the kidnapping of the Plaintiff Julia Sorokin.

51. Detectives Julio Sandoval and Carlos Vasquez are not told of the charges against Plaintiff Julia Sorokin or of her health condition of being three months pregnant, but are provided with a copy of the Plaintiff's Julia Sorokin drivers license taken without a warrant from the Plaintiff Julia Sorokin's

bank account profile. The Detectives Julio Sandoval and Carlos Vasquez also received the fax copy of

the sealed governor's warrant from the Defendant NYPD Detective Terrance Hayes.

52. On the night of December 2nd 2008 at around 4:00 pm, both Plaintiffs were at their home at

101 Market Street, San Diego, California when the Plaintiff Julia Sorokin decided to get some food and

medicine in the neighborhood supermarket when she was attacked by both Detectives Julio Sandoval

and Carlos Vasquez.

53. At first the Plaintiff Julia Sorokin thought that she was being robbed in her doorway of her

building since both Detectives Julio Sandoval and Carlos Vasquez did not have police uniforms and did

not identify themselves as police officers.

54. The Detectives Julio Sandoval and Carlos Vasquez assaulted the Plaintiff Julia Sorokin a

five foot two inches, three months pregnant woman that only weighed 110 pounds with the use of

extreme violence and the use of a Tasser gun.

55. Plaintiff Julia Sorokin then realized the Detectives Julio Sandoval and Carlos Vasquez were

police officers when they asked her to identify herself. Once she told them her name, she was

handcuffed and physically searched in the street in front of her neighbors by the male officers.

56. The Plaintiff Julia Sorokin then asked the Detectives Julio Sandoval and Carlos Vasquez if

she was being arrested and they did not answer. The Plaintiff then asked for her charges and what are

her rights and the Detectives Julio Sandoval and Carlos Vasquez told her to shut up or they will use the

Taser gun on her while wearing hand cuffs and not resisting.

57. The Plaintiff was then thrown in the back of a unmarked van driven by the Detectives Julio

Sandoval and Carlos Vasquez and was not taken to be processed as required by California prisoner

handling laws and regulations, but instead was driven around San Diego in handcuffs with no female

officer present.

58. The Detectives Julio Sandoval and Carlos Vasquez used this time to search and interrogate the Plaintiff Julia Sorokin outside of the city limits of San Diego without an attorney present with further threats of violence and a Tasser gun while the Plaintiff Julia Sorokin was handcuffed.

59. The Detectives Julio Sandoval and Carlos Vasquez were acting under color of law and in direct violation of constitutional rights of the Plaintiff Julia Sorokin when instead of taking her to be processed, where she can call her attorney, they took her to the Las Colinas Women Detention Facility, a women's prison outside of the city of San Diego California.

60. After several hours of searching for his missing pregnant wife, Plaintiff Louis A. Bravo went to the San Diego Police Department for assistance. Once he gave them all her information, they informed him that she has been taken to the Las Colinas Women Detention Facility and that the Plaintiff Julia Sorokin will be extradited to New York City, NY on a sealed governor's extradition warrant number F2008100586.

61. The San Diego Police Department also did not know the charges of the warrant since they were not informed of this illegal kidnapping in their jurisdiction. Defendant NYPD Detective Terrance Hayes utilized Detectives Julio Sandoval and Carlos Vasquez to conduct this illegal kidnapping and interrogation of the Plaintiff Julia Sorokin, a California resident.

**Las Colinas Women Detention Facility Misconduct and Civil Rights Violations**

62. On or around 5:30 pm on December 2nd, 2008, The Plaintiff Julia Sorokin was handed to the Las Colinas Women Detention Facility a San Diego County Jail operated by the Sheriff's Department of San Diego County. The Plaintiff Julia Sorokin was given no medical care for her condition after the violent arrest, and was subjected to no food and water for over 12 hours.

63. When the Plaintiff Julia Sorokin, on or about December 5th, 2008 went before the Judge in San Diego, California wearing chains and prison clothing, the Judge stated he does not know her charges and he can't help her due to the sealed governor's extradition warrant. He then sent her back to prison where the Plaintiff Julia Sorokin was held until her extradition to New York, on December 16th, 2008.

## The Extradition from San Diego, California to New York City, New York

### Police Misconduct and Civil Rights Violations

64. After two weeks in a San Diego County Prison, without knowing her charges, Plaintiff Julia Sorokin was told that she would be picked up by Defendant NYPD Detective Terrance Hayes. When Defendant NYPD Detective Terrance Hayes showed up, on or around December 16th, 2008 at 5:30 pm, with Detectives Julio Sandoval and Carlos Vasquez he put a man's sweater and chains on the Plaintiff Julia Sorokin during a very hot day in Southern California.

65. Prior to the extradition the Defendant NYPD Detective Terrance Hayes spent several hours in San Diego, CA with Detectives Julio Sandoval and Carlos Vasquez searching the Plaintiffs San Diego, CA home at 101 Market Street San Diego, California without a search warrant.

66. At the San Diego Airport Defendant NYPD Detective Terrance Hayes called Defendant Assistant District Attorney Joanne Siegmund at her home and told her "I got her, Ms. Siegmund". The Plaintiff Julia Sorokin was then kept in that sweater and chains for the entire duration of the extradition even when she was passing out from wearing the hot sweater and being three months pregnant.

67. During the nine hour extradition period, which involved a two hour wait in the airport, and an almost seven hour flight from San Diego to New York, Plaintiff Julia Sorokin was only allowed to use the restroom three times.

68. CCVT / Security cameras at the San Diego airport shows the Plaintiff Julia Sorokin in this condition in chains while being forced to walk the entire way to the airplane by Defendant NYPD Detective Terrance Hayes in front of hundreds of people and airport staff members.

69. After a cross country flight in that sweater and chains, Defendant NYPD Detective Terrance Hayes forced the Plaintiff Julia Sorokin to walk into freezing cold temperatures wearing only shower sandals, summer pants, and the man's sweater he forced on her in San Diego, California.

70. CCVT / Security cameras at the New York airport and parking lot shows the Plaintiff Julia Sorokin in this condition in chains while being forced to walk to the Defendant NYPD Detective Terrance Hayes snowed in car in the airport parking lot.

71. Defendant NYPD Detective Terrance Hayes then forced the Plaintiff Julia Sorokin to stand in the freezing temperature outside of the airport in her condition wearing no winter protective clothing or adequate footwear, while Defendant NYPD Detective Terrance Hayes removed snow and ice off his personal car. Defendant NYPD Detective Terrance Hayes is seen wearing winter clothing on camera.

72. Defendant NYPD Detective Terrance Hayes female NYPD partner is also seen on the camera standing there in winter clothing while Defendant NYPD Detective Terrance Hayes removed snow and ice off his personal car.

73. Plaintiff Julia Sorokin had no winter clothing or shoes during this extradition since Defendant NYPD Detective Terrance Hayes kept the details of Plaintiff Julia Sorokin whereabouts off the record and secret from her attorney and family for several days preventing them from providing protective clothing for the freezing temperatures in New York City.

74. Defendant NYPD Detective Terrance Hayes then further violated the Plaintiff Julia Sorokin's rights by taking the Plaintiff Julia Sorokin to another prison in New York City, not a Judge in night court or police processing center called Central Booking in New York City.

75. Defendant NYPD Detective Terrance Hayes and every police officer in the United States of America are required by law and police regulations to take a prisoner to a processing center, and then to a Judge to hear his / her charges.

76. Without knowing her charges, and not being told her rights, and not seeing a Judge Defendant NYPD Detective Terrance Hayes took Plaintiff Julia Sorokin to Rikers Island Correctional Facility a prison in another county of New York State, on or about 4:00 am on December 17th, 2008.

77. The Plaintiff Julia Sorokin was then forced to endure a second prison intake without knowing her charges, nor seeing a Judge or being processed at Central Booking. All this was done to avoid having Plaintiff Julia Sorokin speak to her attorney in Central Booking New York City prior to arraignment.

78. Rikers Island Correctional Facilities then violated prisoner intake rules and regulations of the Corrections Department of the City of New York by taking the Plaintiff Julia Sorokin without being processed as a favor to the Defendants at the District Attorney's Office of New York County and Defendant NYPD Detective Terrance Hayes.

79. The intake Corrections Officer Porter told Defendant NYPD Detective Terrance Hayes that he has to go to Central booking but he told her it's closed for the night and the intake Corrections Officer Porter then took Plaintiff Julia Sorokin into custody, violating prisoner intake rules and regulations of the Corrections Department of the City of New York as well as violating Plaintiff Julia Sorokin's constitutional rights by keeping her location unknown to her attorney.

80. In New York City, according to police regulations, an arresting officer must stay with his or her prisoner until the prisoner is processed at Central Booking even if it is overnight. Defendant NYPD Detective Terrance Hayes said he felt tired after a seven hour flight and since he also lives in that same

county outside New York City as the Rikers Island Correctional Facility, which is in Queens County, he decided to hide the Plaintiff Julia Sorokin off the system while he went home to get some rest.

81. After spending the night in Rikers Island Correctional Facility Plaintiff Julia Sorokin was then taken to The New York County Supreme Court for her second arraignment without speaking to her attorney or knowing her charges. The Plaintiff Julia Sorokin has now been in prison detention for over 400 hours in two states due to this kidnapping under color of law.

82. On or about December 18th, 2008, at 11:30 am, Plaintiff Julia Sorokin was handed back over to Defendant NYPD Detective Terrance Hayes who then placed the Plaintiff Julia Sorokin in a holding cage in his office not with other prisoners where her attorney could not get access to her.

83. Defendant NYPD Detective Terrance Hayes then fingerprinted the Plaintiff Julia Sorokin without telling her the charges or letting her speak to her attorney.  Defendant NYPD Detective Terrance Hayes refused to state the charges and let the Plaintiff Julia Sorokin see her attorney.

84. Defendant NYPD Detective Terrance Hayes had to be replaced by another male NYPD detective since he was using physical violence by slamming the Plaintiff Julia Sorokin's hands on the finger printing equipment when she would not answer his questions during his secret interrogation with no attorney present in his office.

85. Defendant NYPD Detective Terrance Hayes did not take the Plaintiff Julia Sorokin to the Judge for arraignment that day to hear her charges or speak to her attorney since he needed to force a confession out of the Plaintiff Julia Sorokin. Defendant NYPD Detective Terrance Hayes could have taken the Plaintiff Julia Sorokin to night court arraignment in that same building.

86. Defendant NYPD Detective Terrance Hayes then returned the Plaintiff Julia Sorokin back to Rikers Island Correctional Facility without her seeing the Judge or her attorney. The Plaintiff Julia Sorokin still had not been provided winter clothing or food.

87. Defendant NYPD Detective Terrance Hayes kept the Plaintiff Julia Sorokin in a holding cage and did not allow her to attend prisoner meals in central booking with other prisoners.

88. Unknown to Defendant NYPD Detective Terrance Hayes, the Plaintiff Louis A. Bravo now in New York City has located his wife and waited over eight hours at the Rikers Island Correctional facility doorway in freezing temperatures in order to provide a change of clothing, shoes and coat for the Plaintiff Julia Sorokin's second trip back to court after her second night at of Rikers Island Correctional Facility.

89. Plaintiff Julia Sorokin spent a second night at Rikers Island Correctional Facility without knowing her charges or speaking to her attorney. The next day, Plaintiff Julia Sorokin is returned to court for her arraignment, before she is taken to the arraignment Judge, the sealed governor's warrant is unsealed in private listing the false charges of Grand Larceny, Forgery, and Aggravated Personal Identity Theft.

90. Before Plaintiff Julia Sorokin is taken to court, the Grand Larceny and Forgery charges are quietly dropped by the Defendants at the District Attorney's Office without any explanation. Plaintiff's Julia Sorokin attorney was not told of the dropped charges or that they existed in the first place.

91. The Defendants at the District Attorney's Office kept the false Aggravated Personal Identity Theft charges on the indictment which is a violation to both federal and New York State law due to the fact that Aggravated Personal Identity Theft is not a standalone felony charge.

92. Plaintiff Julia Sorokin then went before the arraignment Judge Bruce Allen and was not allowed to speak to her attorney before arraignment. This is the first time Plaintiff Julia Sorokin saw her attorney after close to three weeks of prison of not knowing her charges or being read her rights.

93. The Defendants at the District Attorney's Office added on the fabricated Grand Larceny and Forgery charges to deceive the Grand Jury into giving a felony indictment, and then the Defendants at

the District Attorney's Office removed the false charges before it could be listed into court records and made public.

94. This action of fabricating these false felony charges made an original civil business dispute that Plaintiff Julia Sorokin had with the Dow Jones into a false felony indictment by fabricating charges that did not exist and were not committed by the Plaintiff Julia Sorokin.

95. In an effort to avoid a civil lawsuit in San Diego, California, The Dow Jones and Co. Inc. used the Defendants at the New York County District Attorney's Office with the assistance of attorney Martin Schwimmer to frame and prosecute the Plaintiff Julia Sorokin in New York City.

96. Defendant Assistant District Attorney Joanne Siegmund then told the arraignment court that the Plaintiff Julia Sorokin is being charged with four counts of Personal Identity Theft in an aggravated level, but she did not specify the names of the victims of personal identity theft, and did not specify their residence in New York City.

97. Defendant Assistant District Attorney Joanne Siegmund then presented a newly created indictment no: 5257-08 without the Grand Larceny and Forgery charges with no victims, evidence, crime location, or when the crime occurred.

98. Indictment no: 5257-08 does not justify the request or enforcement of a sealed governor's warrant due to the fact that the charge of Aggravated Personal Identity Theft without any other felonies is not a felony charge in New York State.

- A copy of indictment no: 5257-08 is attached to this complaint as Exhibit B.

99. Defendant Assistant District Attorney Joanne Siegmund then asked the court to give a unreasonable bail of $250,000 to the Plaintiff Julia Sorokin, who has no prior criminal record, is a non-offender, and is not a resident of New York State and has an indictment without victims of a crime in New York State.

100. During arraignment of the Plaintiff Julia Sorokin, the Defendant Assistant District Attorney Joanne Siegmund slandered both of the Plaintiffs Julia Sorokin and her husband Louis A. Bravo with lies and distorted private information obtained without a search warrant from the Plaintiffs' home at 101 Market Street San Diego, California by the Detective Julio Sandoval and Carlos Vasquez. The arraignment Judge granted a $50,000 bail and told the Plaintiff Julia Sorokin to remain in New York State for court proceedings.

**New York City Department of Corrections Misconduct and Civil Rights Violations**

101. After arraignment, Plaintiff Julia Sorokin is once again returned to Rikers Island Correctional Facility until the unreasonable bail is posted for her release. At this point, Plaintiff Julia Sorokin has not had a bed or a shower for over two and a half days.

102. At Rikers Island Correctional Facility Plaintiff Julia Sorokin is given forced medical injections without explanation of what is being given to her. Plaintiff Julia Sorokin is then forced to carry her issued inmate items and her winter clothing that her husband provided in a box to her cell in her condition.

103. That night the Plaintiff Julia Sorokin suffered a miscarriage while waiting for a bed, shower, food, and water that was not provided. The Plaintiff Julia Sorokin was never given medical care or allowed to see a doctor during her detention at Rikers Island Correctional Facility.

104. The Plaintiff Julia Sorokin was then issued an inmate ID that identified her as Jewish subjecting the Plaintiff Julia Sorokin to religious persecution, and abuse by fellow inmates and corrections officers at Rikers Island Correctional Facility.

105. The Plaintiff Julia Sorokin was then forced by the Corrections Officer on duty to provide care for herself and drink hot tap water for hydration the only water available her in the cell.

106. The Plaintiff Julia Sorokin was kept a total of one week at Rikers Island Correctional Facility while the Defendant Assistant District Attorney Joanne Siegmund delayed the release of the Plaintiff Julia Sorokin by not faxing the appropriate forms needed for Julia Sorokin's release.

107. Plaintiff Louis A. Bravo had to wait over 30 hours of freezing temperatures outside of Rikers Island Correctional Facility to recover his wife Plaintiff Julia Sorokin due to the Defendant Joanne Siegmund's delay of paperwork. Plaintiff Louis A. Bravo was subjected to several hours of threats of arrest and harassment by New York City Department of Corrections Officers during this time frame. Plaintiff Julia Sorokin was released at midnight, on December 24th, 2008.

108. After Plaintiff Julia Sorokin endured three weeks in prison a kidnapping and a miscarriage, both Plaintiffs found themselves homeless in the winter in New York City, 3,000 miles from their home in San Diego, California due to the excessive bail restrictions of remaining in the state of New York imposed by both the Defendant Assistant District Attorney Joanne Siegmund and the arraignment Judge Bruce Allen.

**Violation of Due Process during the criminal court proceedings in New York City, NY**

109. During Pre-Trial Discovery, Plaintiff Julia Sorokin's defense attorney was denied every request for discovery denying the Plaintiff Julia Sorokin her Due Process rights. Defendant Assistant District Attorney Joanne Siegmund did not release the Plaintiff Julia Sorokin's personal belongings or her identification that was needed to seek medical care in New York City.

110. Defendant Assistant District Attorney Joanne Siegmund did not return the Plaintiff Julia Sorokin's bible that was taken by Defendant NYPD Detective Terrance Hayes in San Diego before the extradition to New York.

111. The presiding Judge Ronald A. Zweibel granted a review, not a release of the Grand Jury minutes in order to answer jurisdictional challenges by the Plaintiffs. The Defendant Assistant District Attorney Joan Siegmund once again delayed the court process several weeks by not submitting the Grand Jury Minutes to the court.

112. After reviewing the Grand Jury minutes, the presiding Judge Ronald A. Zweibel informed the defense attorney representing the Plaintiff Julia Sorokin that he will be dismissing the indictment since the District Attorney's Office did not present any victims in New York who suffered aggravated personal identity theft.

113. Defendant Assistant District Attorney Joanne Siegmund then came in to court to threaten the presiding Judge Ronald A. Zweibel not to dismiss the indictment. She told the Judge that the Plaintiff Julia Sorokin solicited advertising in California. In response to her unfounded accusations, the Judge told her that selling advertising in California is not a crime in New York and that this is not Aggravated Personal Identity Theft.

**The cover up of false charges with no jurisdiction by Judge Ronald A. Zweibel**

114. One week later, the presiding Judge Ronald A. Zweibel told the court that there will be no disposition on this case and did not state the pre-trial decision for court records. This act of judicial miscount and violation of Due Process is recorded in court minutes. The Judge was supposed to explain his decision on the court record, which he failed to do.

115. The Plaintiff Julia Sorokin was never given her pretrial decision or a reason why the case was not dismissed for lack of jurisdiction and lack of victims.

116. A few days later both Plaintiffs got a copy of the missing pretrial decision. The decision stated that under NYS CPL 20.40, newspapers are persons in New York State and they reside in New

York for jurisdictional purposes, and similar website urls and emails, which the Plaintiff Julia Sorokin purchased and legally owned, is considered Aggravated Personal Identity Theft under NYS Penal Code 190.80 and 190.79.

117. The Judge Ronald A. Zweibel then closed out the pretrial decision by stating that the disclosure of the Grand Jury Minutes is not necessary and that no other motions will be granted before trial.

- A copy of this pretrial decision is attached as Exhibit C

118. The Judge Ronald A. Zweibel did not set dates for pre-trial hearings, where the Plaintiff Julia Sorokin could face her accusers. The Judge Ronald A. Zweibel did not announce the dates for the pre-trial hearings, leaving both Plaintiffs with no closure on the seven months of malicious prosecution and kidnapping of the Plaintiff Julia Sorokin by the Defendants at the New York County District Attorney's Office and Defendant NYPD Detective Terrance Hayes.

119. After speaking with the Defendants at the District Attorney's office in the court room, the Plaintiff Julia Sorokin's defense attorney told both Plaintiffs that big money is involved in this case and that the District Attorney, specifically the Defendant Robert Morgenthau will stop at nothing to put the Plaintiff Julia Sorokin in prison without jurisdiction or existing victims of a crime.

120. The Defendants at the District Attorney's Office of New York County charged the Plaintiff Julia Sorokin with Aggravated Personal Identity Theft of newspapers since they did not have any victims of a crime and needed to close out the indictment with a conviction. The Defendants at the District Attorney's Office of New York County originally stated on the police report that the total number of victims was zero so they had to create a victim even if it wasn't human, which led them to state on the pre-trial decision that newspapers are people and victims of Personal Identity Theft for the sake of jurisdiction.

121. When the Defendants at the District Attorney's Office of New York County failed to find a crime in New York State for which they can indict the Plaintiff Julia Sorokin, they fabricated the false charges of Grand Larceny and Forgery as well as Aggravated Personal Identity Theft.

122. These charges were used by the Defendants at the District Attorney's Office of New York County to mislead the Grand Jury into believing that Plaintiff Julia Sorokin's legal advertising business in California was a major criminal enterprise operating in New York.

123. These false charges also mislead the Grand Jury into believing that the Plaintiff Julia Sorokin stole the personal identification of the employees at the newspapers. The Defendants at the District Attorney's Office of New York conducted this false arrest to frame the Plaintiff Julia Sorokin, by having attorney Martin Schwimmer stand in for the Wall Street Journal as the attorney representing the victims of Aggravated Personal Identity Theft.

124. Without knowing what happened to the case, both Plaintiffs returned to San Diego, California after being homeless in New York State for seven months only to find out that the court had revoked the bail by using the tactic of not setting future court dates for the Plaintiff Julia Sorokin. This action was designed to have the Plaintiff Julia Sorokin miss a court date so she can be returned to prison for the remaining malicious prosecution under color of law.

125.  Both Plaintiffs had also been evicted from their home after the property management company was falsely told of illegal activities being conducted in the Plaintiffs home by the same San Diego Detectives Julio Sandoval and Carlos Vasquez who kidnapped the Plaintiff Julia Sorokin on the request of Defendant NYPD Detective Terrance Hayes.

126. This was sufficient grounds to terminate the lease that was in good standing due to false accusations by both Detectives Julio Sandoval and Carlos Vasquez who did not even know the charges, due to the sealed governor's warrant.

127. Both Detectives Julio Sandoval and Carlos Vasquez then recovered private information without a warrant from the Plaintiff's home as well as documents from the property management company, turning them over to the Defendant NYPD Detective Terrance Hayes.

128. Both Plaintiffs lost everything they owned including furniture, business equipment, personal files, clothing, family photos, their wedding bands-everything was thrown out by the apartment clean up team after the eviction.

129. By losing their business equipment and business files, both Plaintiffs lost all means of generating income due to the apartment clean up done after the eviction.

130. The court records in San Diego will show a record of the eviction of both Plaintiffs from their home. The apartment was already rented to another tenant upon Plaintiffs return to San Diego, adding more humiliation and pain to all factual events listed in this complaint.

131. The Plaintiffs were left no other choice but to seek a federal injunction and damages in this court and in this jurisdiction. The Defendants at the District Attorney's Office of New York County under color of law revoked the Plaintiff Julia Sorokin's bail once they were faced with the reality that they were going to be held accountable in a federal court for violations against the constitutional rights of both Plaintiffs.

132. By not knowing future pre-trial hearing court dates, the Plaintiff Julia Sorokin would certainly miss the next announced court date and that would return her to jail. The Defendants at the District Attorney's Office of New York County had a plan to sentence Plaintiff Julia Sorokin and put her in prison even though no crimes were committed, and no victims were hurt, so that Plaintiff Julia Sorokin would be unable to seek the assistance of a federal court and prove her innocence.

///

///

Page 25 of 67

**Conspiracy and conflict of interest conducted by Defendant Robert Morgenthau**

133. Defendant Robert Morgenthau, former head of the District Attorney's Office of New York County was acting in conspiracy and conflict of interest by starting a malicious investigation and malicious prosecution of an innocent California resident Plaintiff Julia Sorokin.

134. The Defendant Robert Morgenthau, former head of the District Attorney's Office of New York County conducted this malicious investigation and malicious prosecution upon the request of the Wall Street Journal, where Defendant Robert Morgenthau was a frequent writer.

135. After 35 years of public service, the former District Attorney Defendant Robert Morgenthau retired shortly after the bail of the Plaintiff Julia Sorokin was revoked, and took a position with Wachtell, Lipton, Rosen & Katz, a law firm that provides legal counsel to the Bancroft family, who are the original owners of the Dow Jones & Company and the Wall Street Journal.

136. Defendant Robert Morgenthau began his employment at this law firm just ten days after leaving the District Attorney's Office of New York County and overseeing the malicious prosecution of the Plaintiff Julia Sorokin.

137. Defendant Robert Morgenthau's long-time personal assistant Ida Van Lindt, has also has been given a lucrative job at Wachtell, Lipton, Rosen & Katz.

1. This is a link to the web page of Wachtell, Lipton, Rosen & Katz listing the Bancroft Family as a client in the News Corp.'s $5.6 billion acquisition of Dow Jones & Co.

http://www.wlrk.com/Page.cfm/Thread/Practice

- A copy of this web page is also attached as Exhibit D.

2. Defendant Robert Morgenthau's new position at Wachtell, Lipton, Rosen & Katz:

ROBERT M. MORGENTHAU (Of Counsel, LITIGATION)

(tel.) 212.403.1223 (fax) 212.403.2223 RMMorgenthau@wlrk.com

**Argument for Injunction before Trial**

138. In determining whether to grant injunctive relief before trial, the court must consider the following action done under color of law by the Defendants:

1. The Defendants at the District Attorney's Office of New York County defied a U.S. Supreme Court ruling on Aggravated Identity Theft that occurred in 2009 during the discovery process of the criminal court proceedings IGNACIO CARLOS FLORES-FIGUEROA v. UNITED STATES.  The court stated that prosecutors filing Aggravated Identity Theft charges must first prove that the defendant was knowingly in the possession of another person's identification. The Defendants at the District Attorney's Office of New York have not done this.

2. The Defendants at the District Attorney's Office of New York County conspired under color of law by deceiving other law enforcement agencies in order to conduct a kidnapping / extradition of an innocent California resident by using a fraudulently obtained sealed governor's extradition warrant.

3. The Defendants at the District Attorney's Office of New York County are representing the Dow Jones and Co. and the Wall Street Journal that are not victims of a crime.

4. Newspapers are products of publishing corporations, that can't be a victim of Aggravated Personal Identity Theft, and can't be a person who resides in New York for the sake of jurisdiction.

5. The Defendants at the District Attorney's Office of New York County have excessively delayed the trial for their own advantage violating the Sixth Amendment right of the Plaintiff Julia Sorokin. The court process has been delayed seven months, since the Defendants at the District Attorney's Office of New York County refused to release any of the particulars that Plaintiff Julia Sorokin requested in pre-trial discovery motions.  In Strunk v. United States, 412

U.S. 434 (1973), the Supreme Court ruled that if the reviewing court finds that a defendant's right to a speedy trial was violated, then the indictment must be dismissed and/or the conviction overturned.

6. The Defendants at the District Attorney's Office of New York County conspired under color of law and conspiracy by presenting fabricated evidence to the Grand Jury in order to secure a felony indictment, by presenting distorted versions of NYS Penal Code 190.80 and 190.79 to the Grand Jury, in order to secure the false charge of Personal Identity Theft in an Aggravated capacity, as well as fabricating other false felony charges of Grand Larceny and Forgery.

7. The Defendants at the District Attorney's Office of New York County have never presented any people living or deceased in New York State who are victims of Aggravated Personal Identity Theft, thus denying the Plaintiff the right to face her accusers.  This action by the Defendants at the District Attorney's Office of New York County violated the Plaintiff Julia Sorokin's Six Amendment right to confront her accusers in pre-trial.

8. The Defendants at the District Attorney's Office of New York County have never presented any pieces of personal identifying information stolen by the Plaintiff Julia Sorokin in New York State.

9. The Defendants at the District Attorney's Office of New York County presented a false police report and false criminal indictment to the Attorney General's Office of New York in order to obtain a governors warrant.

10. The Defendants at the District Attorney's Office of New York County and the Defendant NYPD Detective Terrance Hayes prevented the Plaintiff Julia Sorokin from speaking to the Grand Jury by using malicious tactics under color of law.

11. The Defendants at the District Attorney's Office of New York County and the Defendant NYPD Detective Terrance Hayes filed a false police report with no victims of Aggravated Personal Identity Theft or crime location in New York State.

12. The Defendants at the District Attorney's Office of New York County have never presented how or where the Plaintiff Julia Sorokin committed the theft of another person's Personal Identity.

13. The Defendants at the District Attorney's Office of New York County have no legal jurisdiction in San Diego, California, where they kidnapped the Plaintiff Julia Sorokin under color of law with the assistance of the San Diego County Sheriff's Department.

14. The Defendants at the District Attorney's Office of New York County acted under color of law by sealing the governor's extradition warrant so that the Plaintiff Julia Sorokin could not know or challenge her charges from San Diego, California.

15. The Defendants at the District Attorney's Office of New York County conspired under color of law by keeping the Plaintiff Julia Sorokin in prison for three weeks in two states denying her rights as secured under the U. S. constitution.

**Plaintiffs' Pain, Suffering and Damages**

139. Plaintiff Julia Sorokin's pain, suffering and damages:

1. Illegal kidnapping and false arrest, and false imprisonment, a violation of constitutional rights.

2. Cruel and unusual punishment, a violation of constitutional rights.

3. Suffered a miscarriage in prison with no medical care.

4. Denied Due Process rights, a violation of constitutional rights.

5. Search of her home without a search warrant, a violation of constitutional rights.

6. Being forced into homelessness in New York for six months.

7. Unreasonably high bail $50,000 USD, a violation of constitutional rights.

8. Never being read Miranda rights, a violation of constitutional rights.

9. Subjected to religious persecution, a violation of constitutional rights.

10. Loss of all personal and business belongings due to eviction of home.

11. Loss of income, reputation, and business or employment opportunities.

140. The Plaintiff Julia Sorokin is now attempting to make a life for herself after surviving several days and weeks of both prison and police abuse, prosecutor misconduct and malicious prosecution. Additionally, the loss of her home and reputation also impacted any future potential of not only being able to restore her personal life and business career, but also gaining future employment.

141. The health damages that the Plaintiff Julia Sorokin has to now live with are:

1. Suffers from constant fear of arrest.

2. Suffers from constant claustrophobia.

3. Suffers from sleeping and eating disorders.

4. Suffers from loss of concentration.

5. Suffers from constant depression.

6. Suffers from fear of being left alone.

7. Suffers from constant nightmares.

8. Suffers from constant anxiety / panic attacks.

142. Plaintiff Louis A. Bravo's pain, suffering and damages:

1. Search of his home without a search warrant, a violation of constitutional rights.

2. Being forced into homelessness in New York State for six months.

Page 30 of 67

3. Loss of all personal belongings due to eviction of home.

4. Loss of Med-Accommodations, a company that provided medical personnel relocation services across North America. This company had an average yearly revenue of $122,286 USD and a market value of over 5 million USD. Plaintiff Louis Bravo lost this business due to eviction of home and removal of business equipment and software.

5. Loss of Clinical Trials Over Watch, a company that provided biotech and pharmaceutical companies with a project management drug development solution. This company had an average yearly revenue of $234,114 USD and a market value of over 10 million USD. Plaintiff Louis Bravo lost this business due to eviction of home and removal of business equipment and software.

6. Emotional and economic pain of having to care for his wife after false arrest.

7. Emotional pain of having lost his unborn child, due to wife's false arrest and unlawful imprisonment in both San Diego County and New York City.

8. Suffers from the enormous financial legal cost due to the false arrest.

143. All damages to both Plaintiffs are a direct result of all the Defendants acting individually or jointly and in conspiracy, and out of the scope of their employment as well as acting under color of law in the violations of constitutional rights as secured by the U.S. Constitution to both Plaintiffs Julia Sorokin and her husband Plaintiff Louis Bravo.

///

///

///

///

///

**CAUSES OF ACTION**

**COUNT 1**

**42 U.S.C § 1983 – PROSECUTOR MISCONDUCT**

**(Defiance of a 2009 U.S. Supreme Court Ruling on Aggravated Identity Theft)**

144. Plaintiffs repeat 1-143 of this Complaint as if restated fully here.

145. The Defendants:

1. The New York County District Attorney's Office

2. Former New York County District Attorney Robert Morgenthau

3. District Attorney Cyrus Vance Jr.

4. Assistant District Attorney Joanne Siegmund

are in clear defiance and violation of a 2009 U.S. Supreme Court ruling IGNACIO CARLOS FLORES-FIGUEROA v. UNITED STATES that states: prosecutors who file identity-theft charges must prove the defendant knew that the information used belonged to 'another person'.

146. The Defendants have never demonstrated how the Plaintiff Julia Sorokin knew the information used belonged to 'another person'.

147. As a result of the Defendants defying a 2009 U.S. Supreme Court Ruling, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

///

///

///

///

Page 32 of 67

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT 2

### 42 U.S.C § 1983 – PROSECUTOR MISCONDUCT

**(Obtaining and enforcing a governor's extradition warrant under color of law)**

148. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

149. The Defendants:

1. The District Attorney's Office of New York County

2. The Attorney General's Office of New York State

3. Former New York County District Attorney Robert Morgenthau

4. Assistant District Attorney Joanne Siegmund

violated Plaintiffs Julia Sorokin's rights by obtaining a governor's extradition warrant under color of law.

150. The Defendants at the District Attorney's Office of New York County used fabricated evidence and presented distorted versions of NYS Penal Code 190.80 and 190.79 to the Grand Jury, as well as added other false felony charges that were dropped before arraignment in order to secure a felony indictment for a false charge of Aggravated Identity Theft.

151. Defendant the Attorney General's Office of the State of New York then issued the governor's extradition warrant upon request from the District Attorney's Office of New York County for the Plaintiff Julia Sorokin without verifying whether the Plaintiff Julia Sorokin was actually a fugitive from New York State or if the request for the warrant was legally sufficient or valid to authorize an extradition.

152. As a result of the obtainment and enforcement of the governor's extradition warrant by the Defendants, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

## COUNT 3

### 42 U.S.C § 1983 – PROSECUTOR MISCONDUCT

**(Sealing of the governor's extradition warrant under color of law)**

153. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

154. The Defendants:

1. The District Attorney's Office of New York County

2. Former New York County District Attorney Robert Morgenthau

3. Assistant District Attorney Joanne Siegmund

violated Plaintiff Julia Sorokin's rights by sealing the governor's extradition warrant.

155. The Defendants at the District Attorney's Office of New York County sealed the governor's extradition warrant in order to conceal the false charges so that the Plaintiff Julia Sorokin, a California resident could not challenge her extradition to New York City, New York.

156. The Defendants at the District Attorney's Office of New York County sealed the governor's extradition warrant in order to conceal the fact that the indictment stated no crime or victims.

157. The Defendant at the District Attorney's Office of New York County sealed the governor's extradition warrant in order to deceive other law enforcement agencies into providing assistance in the kidnapping of Plaintiff Julia Sorokin from her home in 101 Market Street San Diego, CA.

158. As a result of sealing the governor's extradition warrant by the Defendants, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT 4

### 42 U.S.C § 1983 – PROSECUTOR MISCONDUCT

#### (Filling false charges of aggravated personal identity theft)

159. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

160. The Defendants:

1. The New York County District Attorney's Office

2. Former New York County District Attorney Robert Morgenthau

3. Assistant District Attorney Joanne Siegmund

have listed emails and website urls belonging to the Plaintiff Julia Sorokin as means of "identification of another person" who resides in New York.

161. The Defendants are in clear violation of both NYS Penal 190.80 and 190.79 due to the fact that emails and website urls are not "means of personal identification information of another person"

162. As a result of the Defendants use and enforcement of filing false charges, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

## COUNT 5

### 42 U.S.C § 1983 – PROSECUTOR MISCONDUCT

#### (Fabricating false felony charges in order to obtain a Grand Jury indictment)

163. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

164. The Defendants:

1. The New York County District Attorney's Office

2. Former New York County District Attorney Robert Morgenthau

3. Assistant District Attorney Joanne Siegmund

have failed to list any enumerated felonies on indictment number 5257/08. NYS Penal Code190.80 and

190.79 are not stand alone felony charges and must have other enumerated felonies listed in the same

indictment.

165. The Defendants have clearly fabricated false felony charges in order to obtain a felony

indictment from the Grand Jury of New York without a crime in New York.

166. As a result of the Defendants fabricating false felony charges, the Plaintiff Julia Sorokin

was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of

this complaint.

## COUNT 6

### 42 U.S.C § 1983 – PROSECUTOR MISCONDUCT

#### (Fabricating false felony charges in order to obtain jurisdiction)

167. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

168. The Defendants:

1. The New York County District Attorney's Office

2. Former New York County District Attorney Robert Morgenthau

3. Assistant District Attorney Joanne Siegmund

4. The New York City Police Department

5. NYPD Detective Terrance Hayes

have never demonstrated  how the Plaintiff Julia Sorokin owned her business website urls and emails

without lawful authority.  This shows that the Grand Jury indictment obtained by the Defendants was

gotten under color of law using fabricated false felony charges in order to obtain jurisdiction over the

Plaintiff Julia Sorokin a San Diego, California resident.

169. As a result of the Defendants fabricating false felony charges in order to obtain jurisdiction, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

**COUNT 7**

**42 U.S.C § 1983 - DEPRIVATION OF RIGHTS UNDER COLOR OF LAW**

**(Three week unlawful prison detention in two states without stating charges)**

170. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

171.  The Defendants:

1. The New York County District Attorney's Office

2. Former New York County District Attorney Robert Morgenthau

3. Assistant District Attorney Joanne Siegmund

4. The New York City Police Department

5. NYPD Detective Terrance Hayes

deprived the rights of Plaintiff Julia Sorokin under color of law by keeping her in prison in two different states for over a period of three weeks without any contact with her attorney or informing the Plaintiff Julia Sorokin what her charges were at any point during the three weeks in prison.

172. As a result of this unlawful prison detention conducted by the Defendants, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

///

///

///

## COUNT 8

### 42 U.S.C § 1983 – CONSPIRACY AGAINST RIGHTS UNDER COLOR OF LAW

**(Defendants conspired to injure, oppress, threaten, and intimidate Plaintiff Julia Sorokin)**

173. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

174. The Defendants:

1. The New York County District Attorney's Office

2. Former New York County District Attorney Robert Morgenthau

3. Assistant District Attorney Joanne Siegmund

4. The New York City Police Department

5. NYPD Detective Terrance Hayes

6. The New York Attorney General's Office

under color of law violated Plaintiff Julia Sorokin's rights by working in groups of two or more in conspiring to injure, oppress, threaten, and intimidate Plaintiff Julia Sorokin, a California resident, who did not commit any crimes New York State. This act prevented and hindered her free exercise or enjoyment of her rights protected under the U.S. constitution.

175. As a result of the Defendants conspiring against Plaintiff Julia Sorokin's rights, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.


## COUNT 9

### 42 U.S.C § 1983 - VIOLATION OF EIGHTH AMENDMENT RIGHTS

**(Setting an unreasonable bail of $50,000 USD)**

176. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

177. The Defendants:

1. The New York County District Attorney's Office

2. Former New York County District Attorney Robert Morgenthau

3. Assistant District Attorney Joanne Siegmund

violated the Eighth Amendment rights of Plaintiff Julia Sorokin by setting an unreasonable bail which started at $250,000 United States Dollars. The bail was eventually reduced to $50,000 United States Dollars violating the Plaintiff Julia Sorokin's Eighth Amendment protection from being subjected to an unreasonable bail.

178. The Defendants had no legal basis to ask for $250,000 bail for the Plaintiff Julia Sorokin who has no prior criminal record, did not pose a threat to society, did not reside in New York, and did not commit a crime in New York.

179. This tactic was used by the Defendants to ensure that the Plaintiff Julia Sorokin would not be able to post bail, which in turn would allow the Defendants to continue the unlawful detention and imprisonment of Plaintiff Julia Sorokin under color of law.

180. As a result of this act and violation of the Eighth Amendment rights by the Defendants, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

## COUNT 10

### 42 U.S.C § 1983 - VIOLATION OF EIGHTH AMENDMENT RIGHTS

### (Subjecting the Plaintiff Julia Sorokin to extreme temperatures during her extradition)

181. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

182. The Defendants:

1    1. The New York County District Attorney's Office

2    2. Former New York County District Attorney Robert Morgenthau

3    3. Assistant District Attorney Joanne Siegmund

4    4. The New York City Police Department

5

6    5. NYPD Detective Terrance Hayes

7 violated the Eighth Amendment rights of Plaintiff Julia Sorokin by not providing her with proper

8 clothing during the extradition process in two states where temperatures during the time of the

9 extradition ranged from 92° degrees in San Diego, California where the Plaintiff was forced to wear a

10 man's sweater and chains and 18° degrees New York City, New York where the Plaintiff Julia Sorokin

11 was forced to stand in freezing cold temperatures wearing no winter clothing or shoes while the

12 Defendant NYPD Detective Terrance Hayes cleaned his personal car. This is a clear violation of the

13

14 Plaintiff Julia Sorokin's Eighth Amendment rights from being subject to cruel and unusual punishment.

15    183. As a result of this act and violation of the Eighth Amendment by the Defendants, the

16 Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully

17 alleged above in 1-143 of this complaint.

18

19            **COUNT 11**

20

21   **42 U.S.C § 1983 - VIOLATION OF EIGHTH AMENDMENT RIGHTS**

22    **(Failure to provide medical care during unlawful prison detention)**

23  184. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

24  185. The Defendants:

25  1. The New York County District Attorney's Office

26  2. Former New York County District Attorney Robert Morgenthau

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

      3. Assistant District Attorney Joanne Siegmund

      4. The New York City Police Department

      5. NYPD Detective Terrance Hayes

      6. The New York City Department of Corrections

violated the Eighth Amendment rights of Plaintiff Julia Sorokin by not providing her any access to

medical care during her prison detention in Rikers Island Correctional Facilities in Queens New York.

The Plaintiff was never given any medical care during or after her miscarriage at Rikers Island

Correctional Facilities in Queens New York.

      186. This demonstrates a clear violation done by the Defendants against Plaintiff Julia Sorokin's

Eighth Amendment rights from being subjected to cruel and unusual punishment.

      187. As a result of this act and violation of the Eighth Amendment by the Defendants, the

Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully

alleged above in 1-143 of this complaint.

## COUNT 12

### 42 U.S.C § 1983 - VIOLATION OF FIRST AMENDMENT RIGHTS

### (Subjecting the Plaintiff Julia Sorokin to religious persecution)

      188. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

      189.  The Defendants:

      1. The New York County District Attorney's Office

      2. Former New York County District Attorney Robert Morgenthau

      3. Assistant District Attorney Joanne Siegmund

      4. The New York City Police Department

5. NYPD Detective Terrance Hayes

6. The New York City Department of Corrections

violated the First Amendment rights of Plaintiff Julia Sorokin by:

1. Seizing her bible and keeping it from her since the date of the false arrest.

2. Labeling the Plaintiff Julia Sorokin as Jewish on her New York Prison ID tag subjecting her to abuse by correction officers and inmates at Rikers Island Detention Facility for over one week.

3. Not allowing her to attend any religious services and counseling during her three weeks in prison in two states.

190. As a result of this act and violation of the Plaintiff Julia Sorokin's First Amendment rights by the Defendants, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

## COUNT 13

### 42 U.S.C § 1983 - VIOLATION OF FOURTH AMENDMENT RIGHTS

#### (Illegal search and seizure conducted without warrants)

191. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

192. The Defendants:

1. The New York County District Attorney's Office

2. Former New York County District Attorney Robert Morgenthau

3. Assistant District Attorney Joanne Siegmund

4. The New York City Police Department

5. NYPD Detective Terrance Hayes

violated the Fourth amendment by illegally searching:

1. Plaintiff Julia Sorokin's bank accounts without a search warrant.

2. Plaintiff Julia Sorokin's data hosting accounts without a search warrant.

3. Plaintiffs Julia Sorokin's and Louis A Bravo's home at 101 Market Street, San Diego California without a search warrant.

193. As a result of this act and violation of the Fourth Amendment by the Defendants, the Plaintiffs Julia Sorokin and Louis A. Bravo were subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

## COUNT 14

### 42 U.S.C § 1983 - VIOLATION OF JURISDICTIONAL AUTHORITY AND POWERS

#### (Kidnapping of a California resident under color of law)

194. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

195.  The Defendants:

1. The New York County District Attorney's Office

2. Former New York County District Attorney Robert Morgenthau

3. Assistant District Attorney Joanne Siegmund

4. The Attorney General's Office of New York State

5. The New York City Police Department

6. NYPD Detective Terrance Hayes

violated their jurisdictional authority and powers by kidnapping Plaintiff Julia Sorokin outside of her home at 101 Market Street in San Diego, California while acting under color of law.  The Defendants only have Jurisdictional Authority and Powers in New York City, New York.

196. As a result of this act and violation of jurisdictional authority and power by the Defendants, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

## COUNT 15

### 42 U.S.C § 1983 - FAILURE TO INTERVENE

### (District Attorney Defendant Cyrus Vance failure to intervene)

197. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

198. The Defendant District Attorney of New York County Cyrus Vance Jr. has failed to address the malicious investigation, the malicious prosecution, prosecutor misconduct and civil rights violations done by the Defendants listed above against the Plaintiff Julia Sorokin.

199. The Defendant District Attorney of New York County Cyrus Vance Jr. was informed of the malicious investigation, malicious prosecution, prosecutor misconduct and civil rights violations and details of the kidnapping and unlawful imprisonment of the Plaintiff Julia Sorokin on March 1st 2010. This information came in the form of a cease of a desist letter by the Plaintiff Louis A. Bravo. The Defendant District Attorney of New York County Cyrus Vance Jr. has taken no action to stop, prosecute, or discipline any of the Defendants listed in this complaint.

200. The Defendant District Attorney of New York County Cyrus Vance Jr. has also continued the prosecution of Plaintiff Julia Sorokin initiated by his predecessor Robert Morgenthau by utilizing the very members of his staff who were responsible for the malicious investigation, malicious prosecution, prosecutor misconduct and civil rights violations.

201. As a result of the failure to intervene by the Defendant District Attorney of New York County Cyrus Vance Jr., the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

**COUNT 16**

**42 U.S.C § 1983 - CONSPIRACY AND CONFLICT OF INTEREST**

**(Defendant former District Attorney of New York Robert Morgenthau)**

202. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

203.  Robert Morgenthau, former head of the District Attorney's Office was acting in conspiracy and conflict of interest by starting a malicious investigation and malicious prosecution of an innocent California resident Plaintiff Julia Sorokin.  This was done on the request of the Dow Jones & Company, who owns the Wall Street Journal. The Former District Attorney Robert Morgenthau was a frequent writer for the Wall Street Journal, and had a vested interest in protecting the Wall Street Journal business interest.

204. The Former District Attorney Robert Morgenthau has retired after 35 years of public service and quickly secured a position with Wachtell, Lipton, Rosen & Katz.  This law firm provides legal counsel to the Bancroft family, who are the original owners of the Dow Jones & Co. Inc and the Wall Street Journal.  The new employment at this law firm by the former District Attorney Robert Morgenthau demonstrates that he was acting in conspiracy and in conflict of interest by prosecuting an innocent California resident, Plaintiff Julia Sorokin over a civil website domain dispute, which is not a crime.

205. As a result of this act of conspiracy and conflict of interest by the Defendant, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

///

///

///

**COUNT 17**

**42 U.S.C § 1983 - INTENTIONAL MISREPRESENTATION**

**(District Attorney Office of New York County libel press release)**

206. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

207. On December 17th, 2008, hours before the Plaintiff Julia Sorokin's arraignment, the Defendant former District Attorney Robert Morgenthau posted a written press release on the District Attorney's Office website. This libel press release was made up of statements that are known to be false by Defendant former District Attorney Robert Morgenthau.

208. The District Attorney's Office of New York County then sent this press release to the Dow Jones news feed service who then translated it into several languages, and distributed it to major media outlets around the United States and around the world. This action was done by the Defendants at the District Attorney's Office of New York County in order to destroy the Plaintiff Julia Sorokin's character before court proceedings began and ensuring the Plaintiff Julia Sorokin could not get a fair trial.

209. As a result of this intentional act of misrepresentation by the Defendants at the District Attorney's Office of New York County, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

**COUNT 18**

**42 U.S.C § 1983 – VIOLATION OF DUE PROCESS**

**(Failure to read Miranda warnings during police interrogations under custody)**

210. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

211. The Defendants:

1. The New York Police Department

2. NYPD Detective Terrance Hayes

never read the Plaintiff Julia Sorokin her Miranda Warnings at anytime during:

1. Her kidnapping outside of her home at 101 Market Street, San Diego California.

2. During her interrogation by San Diego County Sheriff's Detectives Julio Sandoval and Carlos Vasquez in their unmarked vehicle without a female officer present.

3. During Defendant NYPD Detective Terrance Hayes interrogations without her attorney.

212. The Miranda warnings must have been given to the Plaintiff Julia Sorokin since she was in custody and being asked questions first by the Detectives Carlos Vasquez and Julio Sandoval in California and then by Defendant NYPD Detective Terrance Hayes in New York. The Plaintiff Julia Sorokin was also forced to speak with several members of the District Attorney's staff without the presence of her attorney.

213. As a result of the Defendants failure to read to the Plaintiff Julia Sorokin her Miranda warnings, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

### COUNT 19

### 42 U.S.C § 1983 - VIOLATION OF SIXTH AMENDMENT RIGHTS

**(Denying of access to an attorney during unlawful prison detention in two states)**

214. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

215. The Defendants:

1. The New York County District Attorney's Office

2. Former New York County District Attorney Robert Morgenthau

3. Assistant District Attorney Joanne Siegmund

4. The New York City Police Department

5. NYPD Detective Terrance Hayes

never allowed the Plaintiff Julia Sorokin access to her attorney since they arrested her on a sealed

governor's warrant. They kept her arrest a secret from her attorney, and detained her for two and a half

weeks in two prisons in two different states before she could speak to her attorney.  Plaintiff Julia

Sorokin went directly into criminal court proceedings without speaking to her attorney in both states.

216. As a result of the violation of the Sixth Amendment by the Defendants, the Plaintiff Julia

Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in

1-143 of this complaint.

## COUNT 20

### 42 U.S.C § 1983 - VIOLATION OF SIXTH AMENDMENT RIGHTS

#### (Delaying of trial in order to gain a tactical advantage)

217. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

218.  The Defendants:

1. The New York County District Attorney's Office

2. Former New York County District Attorney Robert Morgenthau

3. Assistant District Attorney Joanne Siegmund

4. The New York City Police Department

5. NYPD Detective Terrance Hayes

violated the Plaintiffs Julia Sorokin's Sixth Amendment right to a speedy and public trial by:

1. Arresting the Plaintiff Julia Sorokin six months after the false police report was filed.

2. Detaining the Plaintiff for three weeks in two prisons in two different states without stating her charges or names of the victims or witnesses of a crime.

3. Delaying discovery by not releasing the grand jury minutes in a timely manner and blocking the Plaintiff Julia Sorokin's ability to prepare for a speedy and public trial.

219. The entire process lasted for over a year; from police report filed on May 31st 2008 to the last court date July 8th 2009.

220. In Strunk v. United States, 412 U.S. 434 (1973), the Supreme Court ruled that if the reviewing court finds that a defendant's right to a speedy trial was violated, then the indictment must be dismissed and/or the conviction overturned. The Court has held that, since the delayed trial itself is the state action which violates the defendant's rights, no other remedy would be appropriate. Thus, a reversal or dismissal of a criminal case on speedy trial grounds means that no further prosecution for the alleged offense can take place.

221. As a result of the violation of the Sixth Amendment by the Defendants, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.


### COUNT 21

### 42 U.S.C § 1983 - VIOLATION OF SIXTH AMENDMENT RIGHTS

### (Refusal to present accusers or victims of a crime)

222. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

223. The Defendants:

1. The New York County District Attorney's Office

2. Former New York County District Attorney Robert Morgenthau

1   3. Assistant District Attorney Joanne Siegmund

2   acted under color of law by refusing to present the accusers or victims of a crime to the Plaintiff Julia

3   Sorokin during pre-trial proceedings, which is a direct violation of the Plaintiff Julia Sorokin's Sixth

4   Amendment rights to face her accusers in court.

5   224. As a result of the violation of the Sixth Amendment by the Defendants, the Plaintiff Julia

6

7   Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in

8   1-143 of this complaint.

9

10   **COUNT 22**

11   **42 U.S.C § 1983 - MALICIOUS PROSECUTION**

12   **(Conducting a criminal prosecution under color of law with no victims of a crime)**

13   225. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

14

15   226.  The Defendants:

16   1. The New York County District Attorney's Office

17   2. Former New York County District Attorney Robert Morgenthau

18   3. Assistant District Attorney Joanne Siegmund

19   engaged in malicious prosecution under color of law against the Plaintiff Julia Sorokin by not

20   presenting any victims of a crime or witnesses of a crime during the Grand Jury in criminal court

21

22   proceedings against the Plaintiff Julia Sorokin.

23   227. As a result of the malicious prosecution by the Defendants, the Plaintiff Julia Sorokin was

24   subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this

25   complaint.

26   ///

27

28

**COUNT 23**

**42 U.S.C § 1983 - MALICIOUS PROSECUTION**

**(Placing excessive bail restrictions on a California resident)**

228. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

229. The Defendants:

1. The New York County District Attorney's Office

2. Former New York County District Attorney Robert Morgenthau

3. Assistant District Attorney Joanne Siegmund

demand that the Plaintiff Julia Sorokin be forced to stay in New York City during court proceedings was excessive, since the Plaintiff Julia Sorokin had not committed any crime in New York. The Plaintiff Julia Sorokin is a California resident, who was not a fugitive from New York as the Defendants alleged. Plaintiff Julia Sorokin had no home in New York State, which made her homeless in New York for over six months.

230. This action was excessive and used as a tactic under color of law by the Defendants. This action was done so that the Plaintiff Julia Sorokin would not be able to return to her home in San Diego, California out of the legal jurisdiction of the Defendants.

231. As a result of excessive bail restrictions imposed by the Defendants, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

///

///

///

///

## COUNT 24

### 42 U.S.C § 1983 - MALICIOUS PROSECUTION

### (Unlawful Criminal Prosecution of a Civil Business Dispute)

232. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

233. The Defendants:

1. The New York County District Attorney's Office

2. Former New York County District Attorney Robert Morgenthau

3. Assistant District Attorney Joanne Siegmund

4. The New York City Police Department

5. NYPD Detective Terrance Hayes

acted under color of law by conducting an unlawful criminal prosecution of a civil business dispute between the Dow Jones Co. and the Plaintiff Julia Sorokin's corporations Crystal Clear Media LLC and Perfect Vision Media LLC.

234. The Defendants had no jurisdiction or authority to assist the Dow Jones and Co. gain a tactical advantage over the Plaintiff Julia Sorokin, a California business owner, who did not commit a crime in New York. The Defendants were acting in conspiracy, as well as out of their scope of employment and under color of law.

235. As a result of these actions by the Defendants, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

///

///

///

///

# COUNT 25

## 42 U.S.C § 1983 - FILING A FALSE POLICE REPORT

### (Police report with no victims or location of a crime in New York)

236. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

237. The Defendants:

1. The New York County District Attorney's Office

2. Former New York County District Attorney Robert Morgenthau

3. Assistant District Attorney Joanne Siegmund

4. The New York City Police Department

5. NYPD Detective Terrance Hayes

acted under color of law by filing a false police report against the Plaintiff Julia Sorokin on May 31st 2008, at the 5th NYPD precinct, which is across the street from the District Attorney's Office of New York County. The Police report stated no victims or location of a crime and was filed by the Defendants, not a victim or witness to a crime.

238. As a result of filing a false police report by the Defendants, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

# COUNT 26

## 42 U.S.C § 1983 – MALICIOUS PROSECUTION

### (Presenting newspapers as human victims of aggravated personal identity theft)

239. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

240. The Defendants:

1.  The New York County District Attorney's Office

2.  Former New York County District Attorney Robert Morgenthau

3.  Assistant District Attorney Joanne Siegmund

acted under color of law by presenting newspapers as human victims of aggravated personal identity theft who reside in New York City, NY.

241. The Defendants also stated that website urls and business emails that the Plaintiff Julia Sorokin legally owned were pieces of personal identifying information that she stole from the newspapers, who they said were people residing in New York.

242. The Defendants are acting under color of law by presenting newspapers as people victims of aggravated personal identity theft, and by stating that these "victims" reside in New York.

243. As a result of these actions under color of law by the Defendants, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

## COUNT 27

### 42 U.S.C § 1983 – CONSPIRACY AGAINST RIGHTS WITH MALICE

### (Malicious entrapment of the Plaintiff Julia Sorokin)

244. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

245.  The Defendants:

1. The New York City Police Department

2. NYPD Detective Terrance Hayes

3. The New York County District Attorney's Office

4. Former New York County District Attorney Robert Morgenthau

5. Assistant District Attorney Joanne Siegmund

maliciously conspired against the Plaintiff Julia Sorokin rights by entrapping the Plaintiff Julia Sorokin by not letting her know she is under indictment during their conversation prior to the kidnapping.

246. This conversation took place when the Plaintiff Julia Sorokin called the Defendant NYPD Detective Terrance Hayes on her cell phone from her home at 101 Market Street, San Diego, California on or about November 15th, 2008. Defendant NYPD Detective Terrance Hayes told the Plaintiff Julia Sorokin she does not need to come to New York City with her attorney.

247. During their conversation, Defendant NYPD Detective Terrance Hayes lied to the Plaintiff Julia Sorokin and told her she was a victim of identity theft, rather than doing his duty as a police officer, and informing her that she has been indicted, and has a warrant out for her arrest.

248. The Plaintiff Julia Sorokin was then subjected to enormous physical and emotional abuse that could have been prevented by the Plaintiff Julia Sorokin going to New York with her attorney and challenging the false charges without the three week unlawful imprisonment and kidnapping.

249. As a result of malicious actions by the Defendants, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

## COUNT 28

### 42 U.S.C § 1983 - VIOLATION OF DUE PROCESS RIGHTS

### (Deliberate withholding of exculpatory evidence)

250. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

251. The Defendants:

1. The New York County District Attorney's Office

1       2. Former New York County District Attorney Robert Morgenthau

2       3. Assistant District Attorney Joanne Siegmund

deliberately withheld exculpatory evidence that the Plaintiff Julia Sorokin did not steal any person's identifying information.

       252. The Defendants withheld the original warrant, grand jury minutes and police report that would have proven that the prosecutor did not have any crime victims or jurisdiction over the Plaintiff Julia Sorokin since no crime was ever committed.

       253. The Defendants deliberately withheld evidence that the Plaintiff Julia Sorokin did not live in New York or that the defendants did not have any victims or evidence of aggravated identity theft.

       254. As a result of violation of Due Process rights by the Defendants, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

### COUNT 29

### 42 U.S.C § 1983 – FALSE IMPRISONMENT

**(Defendants deliberate hiding of Plaintiff Julia Sorokin for two weeks in a California prison)**

       255. Plaintiffs repeat 1-131 of this complaint as if restated fully here.

       256. The Defendants:

       1. The New York County District Attorney's Office

       2. Former New York County District Attorney Robert Morgenthau

       3. Assistant District Attorney Joanne Siegmund

       4. NYPD Detective Terrance Hayes

       5. The New York City Police Department

illegally and under color of law hid the Plaintiff Julia Sorokin for two weeks in the Las Colinas Women

Detention Center in Santee California while the Defendants figured out a way to convict her on false

charges in New York City, NY.

257. This tactic of hiding the Plaintiff Julia Sorokin out of reach of her attorney and under a

sealed governor's warrant gave the Defendants the time they needed to hide the grand jury minutes, the

police report with no victims and the additional fabricated charges as well as the fact that the Plaintiff

Julia Sorokin is an innocent California resident who did not commit the crime of aggravated identity

theft in New York State.

258. As a result of this false imprisonment by the Defendants, the Plaintiff Julia Sorokin was

subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this

complaint.


## COUNT 30

### 42 U.S.C § 1983 – PROSECUTOR MISCONDUCT

**(Denial of the right to testify before the Grand Jury of New York City, NY)**

259. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

260. The Defendants:

1. The New York County District Attorney's Office

2. Former New York County District Attorney Robert Morgenthau

3. Assistant District Attorney Joanne Siegmund

4. The New York City Police Department

5. NYPD Detective Terrance Hayes


Page 57 of 67

denied the Plaintiff Julia Sorokin her right to testify and be present with her attorney during the Grand

Jury proceedings.

261. The Defendants did this to gain a tactical advantage due to the fact that if the Plaintiff Julia

Sorokin could have shown the Grand Jury that her corporations own the emails and website urls in

question and that she is a San Diego, CA resident, she could never have been indicted.

262. In New York State, the target of an investigation has a right to testify before the Grand

Jury. In fact, if the prosecution violates this right and presents the case to the Grand Jury, a judge may

dismiss the indictment and require that the prosecution re-present the case to the Grand Jury to allow

the defendant to testify.

263. In 1978, the New York state passed a law that allows a defense lawyer to accompany the

target of an investigation into the grand jury room.

264. As a result of the denial of testifying to the Grand Jury by the Defendants, the Plaintiff

Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged

above in 1-143 of this complaint.


## COUNT 31

### 42 U.S.C § 1983 - VIOLATION OF EIGHTH AMENDMENT RIGHTS

### (Withholding of food and water during the three day pre-arraignment detention)

265. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

266.  The Defendants:

1. The New York City Police Department

2. NYPD Detective Terrance Hayes

3. The New York City Department of Corrections

subjected the Plaintiff Julia Sorokin to cruel and unusual punishment by not providing any food or

water during the three day pre-arraignment detention by Defendant NYPD Detective Terrance Hayes.

267. Defendant NYPD Detective Terrance Hayes used this tactic as punishment against the

Plaintiff Julia Sorokin for refusal to speak without her attorney present.

268. As a result of this cruel and unusual punishment conducted by the Defendants, the Plaintiff

Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged

above in 1-143 of this complaint.

## COUNT 32

### 42 U.S.C § 1983 - VIOLATION OF EIGHTH AMENDMENT RIGHTS

### (Denial of a bed or a shower to the Plaintiff Julia Sorokin for three days)

269. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

270.. The Defendants:

1. The New York City Department of Corrections

2. The New York City Police Department

3. NYPD Detective Terrance Hayes

subjected the Plaintiff Julia Sorokin to cruel and unusual punishment by not providing a bed or a

shower to the Plaintiff Julia Sorokin for three days from the pickup of the Plaintiff Julia Sorokin in San

Diego, CA on December 16th 2008 until the Plaintiff Julia Sorokin to received housing at Rikers Island

Correctional Facilities the night of December 19th 2008.

271. The Plaintiff Julia Sorokin had to endure three days of sleeping on benches, chairs, and

floors with no shower while being three months pregnant.

///

272. The Plaintiff Julia Sorokin suffered her miscarriage after being subjected to a clear violation of not only her constitution rights but of prisoner handling and housing guidelines at the New York City Department of Corrections and the New York City Police Department.

273. As a result of this cruel and unusual punishment conducted by the Defendants, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

## COUNT 33

### 42 U.S.C § 1983 – DENIAL OF PROPERTY AND MALICIOUS PROSECUTION

### (Refusal to release the Plaintiff Julia Sorokin's belongings after posting bail)

274. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

275. The Defendants:

1. The New York County District Attorney's Office

2. Former New York County District Attorney Robert Morgenthau

3. Assistant District Attorney Joanne Siegmund

4. The New York City Police Department

5. NYPD Detective Terrance Hayes

released the Plaintiff Julia Sorokin from Rikers Island Correctional Facilities at midnight without any of her belongings such as money, identification, etc. The Plaintiff Julia Sorokin needed these items to seek medical care, housing and purchase winter clothing.

276. The Defendants never handed the Plaintiff Julia Sorokin's property back due to the fact that Defendant NYPD Detective Terrance Hayes never turned them into the Rikers Island Correctional Facilities. Defendant NYPD Detective Terrance Hayes kept all of the Plaintiff Julia Sorokin's

belongings that were supposed to be released to her in his desk at the District Attorney's Office of New York County.

277. The Plaintiff Julia Sorokin was refused care from four New York City hospitals due to the fact she did not have any form of identification to provide to the admitting nurse. These hospitals are Bellevue Hospital Center, Metropolitan Hospital Center, Elmhurst Hospital Center, and Queens Hospital Center.

278. Without identification the Plaintiff Julia Sorokin ran the risk of once again being arrested in New York City by multiple New York Police Check Points created after the September 11th terror attacks that unconstitutionally request that citizens that enter the multiple check points to show identification and be subjected to a search without probable cause.

279. The Defendants were forced to hand over one of Plaintiff Julia Sorokin's identification three months after the arrest by the presiding Judge, after numerous requests by the Plaintiff Julia Sorokin and her defense attorney.

280. As a result of this act of denial of property and malicious prosecution conducted by the Defendants, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.


**COUNT 34**

**42 U.S.C § 1983 - VIOLATION OF EIGHTH AMENDMENT RIGHTS**

**(Subjecting the Plaintiff Julia Sorokin to perform labor instead of providing medical care)**

281. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

282. The Defendant the New York City Department of Corrections subjected the Plaintiff Julia Sorokin to cruel and unusual punishment by forcing the Plaintiff Julia Sorokin to clean a janitorial

room / area on of December 24th 2008 instead of providing the Plaintiff Julia Sorokin with access to a doctor for medical care.

283. The Plaintiff Julia Sorokin had to miss her afternoon meal due to the fact that a Rikers Island Correction Officer forced her to clean a janitorial room / area while other inmates were attending the afternoon meal session.

284. The Plaintiff Julia Sorokin was told on Friday December 19th 2008 she will be allowed to see a doctor, but was never taken to see one after suffering her miscarriage. The Plaintiff Julia Sorokin after waiting six days for medical treatment was then forced to perform labor before she could be given a meal and prepare for her release later that night.

285. As a result of this cruel and unusual punishment conducted by the Defendant, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

## COUNT 35

### 42 U.S.C § 1983 - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Unlawful prison detention without stating charges)

286. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

287. The Defendant:

1. The New York County District Attorney's Office

2. Former New York County District Attorney Robert Morgenthau

3. Assistant District Attorney Joanne Siegmund

4. The New York City Police Department

5. NYPD Detective Terrance Hayes

6. The New York City Department of Corrections subjected the Plaintiff Julia Sorokin to intentional infliction of emotional distress by keeping the Plaintiff Julia Sorokin two and a half weeks in prison without knowing her charges due to the sealed governor's warrant.

288. The Plaintiff Julia Sorokin suffered for weeks without knowing what crime she had done or how long would she be in prison. Corrections Officers at Rikers Island Correctional Facility further subjected the Plaintiff Julia Sorokin to intentional infliction of emotional distress by telling the Plaintiff Julia Sorokin that only major criminals get extradited on sealed governor's warrants.

289. The Plaintiff Julia Sorokin suffered additional intentional infliction of emotional distress during her extradition, prison intake process in two prisons, and malicious prosecution.

290. As a result of this intentional infliction of emotional distress conducted by the Defendants, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

## COUNT 36

### 42 U.S.C § 1983 – FALSE ARREST

**(No probable cause or jurisdiction to conduct the arrest in San Diego, California)**

291. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

292. The Defendants:

1. The New York County District Attorney's Office

2. Former New York County District Attorney Robert Morgenthau

3. Assistant District Attorney Joanne Siegmund

4. The New York City Police Department

5. NYPD Detective Terrance Hayes

6. The New York Attorney General's Office

conducted a false arrest of the Plaintiff Julia Sorokin by not having probable cause or jurisdiction to

conduct the arrest of Plaintiff Julia Sorokin in San Diego, California.

293. As a result of this act conducted by the Defendants, Plaintiff Julia Sorokin was subjected to

illegal, improper, and false arrest by defendants and taken into custody and caused to be falsely

imprisoned, detained, and confined, without any probable cause, or legal jurisdiction.

294. As a result of this false arrest conducted by the Defendants, the Plaintiff Julia Sorokin was

subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this

complaint.

## COUNT 37

### 42 U.S.C § 1983 – DENIAL OF CONSTITUTIONAL RIGHTS TO FAIR TRIAL

#### (Denying access to review the Grand Jury minutes for trial preparation)

295. Plaintiffs repeat 1-143 of this complaint as if restated fully here.

296. The Defendants:

1. The New York County District Attorney's Office

2. Former New York County District Attorney Robert Morgenthau

3. Assistant District Attorney Joanne Siegmund

denied the Plaintiff Julia Sorokin the right to review the Grand Jury minutes that would have proven

that the Defendants at the District Attorney's Office of New York County never had a victim of a crime

which is clearly illustrated in the police report.

///

Page 64 of 67

297. As a result of this act conducted by the Defendants at the District Attorney's Office of New York County, Plaintiff Julia Sorokin and her defense attorney were blocked from preparing an adequate defense to address the false criminal allegations.

298. The Defendants at the District Attorney's Office of New York County have stated that they will never allow anyone to review the Grand Jury minutes after the presiding Judge Ronald A. Zweibel questioned the Defendant Assistant District Attorney Joanne Siegmund on the lack of jurisdiction and having no victims of personal identity theft in New York.

299. The Defendants at the District Attorney's Office of New York County therefore violated Plaintiff Julia Sorokin's constitutional rights to a fair trial under the Fifth and Fourteenth Amendments of the United States Constitution.

300. As a result of this violation of the Plaintiff Julia Sorokin's constitutional rights to fair trial conducted by the Defendants at the District Attorney's Office of New York County, the Plaintiff Julia Sorokin was subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-143 of this complaint.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Julia Sorokin and Plaintiff Louis A. Bravo respectfully request that this court enter judgment in favor of the Plaintiffs and against the Defendants listed in this complaint and award the Plaintiffs:

1. A permanent injunction ordering Defendant Cyrus Vance Jr., in his official capacity as District Attorney of New York County and all of his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him from engaging in the unlawful prosecution of the Plaintiff Julia Sorokin.

Page 65 of 67

2. The immediate removal of the false and incriminating Plaintiff Julia Sorokin's press release on the District Attorney's of New York County's website.

3. The immediate return of all properties belonging to the Plaintiff Julia Sorokin. Items are: bible, cell phone, purse, and all documents including documents taken from Plaintiffs home in San Diego, CA.

4. The immediate removal of all criminal photos and finger prints taken of the Plaintiff Julia Sorokin.

5. An immediate review by the New York State Attorney General's Office and the District Attorney's Office of New York County of all personal identity theft criminal indictments that have been prosecuted by the Defendant Assistant District Attorney of New York County Joanne Siegmund.

6. An immediate criminal investigation by the New York State Attorney General's Office and the District Attorney's Office of New York County of Defendant NYPD Detective Terrance Hayes for filing a false police report and kidnapping the Plaintiff Julia Sorokin under color of law from her home at 101 Market Street San Diego California.

7. An immediate request by the New York State Attorney General's Office and the District Attorney's Office of New York County for the disbarment of the Defendant Assistant District Attorney of New York County Joanne Siegmund by the New York State Bar Association.

8. The Plaintiffs be awarded against all the Defendants, jointly and severally exemplary damages in the amount of $200,000,000.00 (Two Hundred Million U.S Dollars)

9. The Plaintiffs be awarded against all the Defendants, jointly and severally compensatory damages in the amount of $200,000,000.00 (Two Hundred Million U.S Dollars)

10. The Plaintiffs be awarded interest, the cost of disbursements and legal fees of this action, and such other and further relief, as the court may seem just and proper.

**JURY TRIAL DEMANDED**

Respectfully submitted:

_Sorokin_

Julia Sorokin Pro Se
Plaintiff
3895 Clairemont Drive, Suite B # 210
San Diego, CA
Email: ljemail2010@aol.com
Tel: 858 384 3528; Fax: 858 384 3581

DATED: 05.25.2010

Louis A. Bravo Pro Se
Plaintiff
3895 Clairemont Drive, Suite B # 210
San Diego, CA
Email: ljemail2010@aol.com
Tel: 858 384 3528; Fax: 858 384 3581

DATED: 05/25/2010

# EXHIBIT - A

Plaintiff Julia Sorokin's Police Report
with no victims of a crime.

NEW YORK CITY POLICE DEPT ARREST REPORT RUN DATE 10/17/08 RUN TIME 17:01:33

*******************************************************
DEFENDANT INFORMATION                    ARREST ID: M08002876
NAME SUROKIN    JULIA        SEX F RACE WHITE    DOB 06/02/70 AGE 37
              CTZ YES POB SOVIET UNION        PHONE ( )

ADDR ID:    MARKED ST    SAN DIEGO    CA 307    RES CITY OTHER STATE
SKIN TONE LIGHT   HGT 510   WGT 100 EYE COLOR GRAY   HAIR COLOR BLACK
SOC STATUS         SOC SEC # 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   DEFT/VICT RELAT NONE
PHYSICAL COND APPARENT NORMAL        TYPE DRUG USED NONE
OCCUPATIONAL AREA UNKNOWN
OFFENSE/PERMIT TYPE(EX) DRIVEWORK/REG            NO.
CHILD  NO            NAME            NO            NAME
NYSID NO 6629189D  NYSID# 7963115Y  FAX# D082467  ARR PROC ON LINE ARREST

*******************************************************
NARRATIVE    PURSUANT TO NY SUPREME CT IND#5257-2008 BY SA
             DIEGO CA SHERIFFS OFFICE RETURNED TO NYC 10/17
             /08

*******************************************************
CHARGE INFORMATION
                 TT  LAW   SEC SUB  CLS TYPE CTS       DESCRIPTION
TOP CHARGE      PL  190.80 00   F   D   03   IDENTITY THFT-1
                PL  190.80 00   F   D   01   IDENTITY THFT-1
COUNT           PL  190.79 00   F   D   03   IDENTITY THFT-2

*******************************************************
ARREST RELATED INFORMATION        DATE NO
TIME 17:05 DATE 10/17/08 CMD JOS        ARREST LOC SAN DIEGO CA
WEAPON POSS/USED NONE
OUT OF ASSOC 00
PROPERTY VOUCHER#        NONE

.....................................................
COMPLAINANT/VICT - C/VICTIM INFORMATION
IS COMP A CORP? NO  OR BODY  YES  OR DISABLED? NO → TOTAL VICTIMS = 00
COMPL NAME  PENN
ADDR                              TEL NUM
ACCT NO       ALTED CMD       ACC NO       ACC CMD
UN-6     NO PENTAG CMD JOS SECTOR XX  JURISDICTION N.Y. POLICE DEPT
TIME / DATE OF OCCURRENCE   07:00 UN  05/31/08   METHOD OTHER
PREMISES COMMERCIAL BUILDING        LOCATION NY COUNTY
.....................................................
ARRESTING OFFICER INFORMATION
NAME HAYES        TERENCE    RANK DET TAX NUMBER 944913    SHIELD 001251
OFF OTHER        CMD OTHER              SQUAD 57    ASSN 990

OFFICER INJURED? NO    ASSIGNED YES    ON DUTY? YES   IN UNIFORM? NO
PER FORCE NO  TYPE            REASON
.....................................................

# EXHIBIT - B

## Plaintiff Julia Sorokin's NY Indictment with no victims of a crime.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Port - 41 - 50,000
50,000
Bail

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THE PEOPLE OF THE STATE OF NEW YORK

-against-

Julia Sorokin (AKA Victoria Gleizer, Nancy Gold, Kelly Armstrong, Meredith Taylor)

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THE GRAND JURY OF THE COUNTY OF NEW YORK, by this indictment, accuse the defendant of the crime of **IDENTITY THEFT IN THE FIRST DEGREE**, in violation of Penal Law §190.80(1), committed as follows:

The defendant, in the County of New York and elsewhere, during the period from on or about May 10, 2007 to on or about March 5, 2008, knowingly and with intent to defraud assumed the identity of another person, to wit, The Wall Street Journal, by presenting herself as that other person, and by acting as that other person, and by using personal identifying information of that other person and thereby obtained money in an aggregate amount that exceeded two thousand dollars.

SECOND COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuse the defendant of the crime of **IDENTITY THEFT IN THE FIRST DEGREE**, in violation of Penal Law §190.80(3), committed as follows:

The defendant, in the County of New York and elsewhere, during the period from on or about May 10, 2007 to on or about March 5, 2008, knowingly and with intent to defraud assumed the identity of another person, to wit, The Wall Street Journal, by presenting herself as that other person, and by acting as that other person, and by using personal identifying information of that other person and thereby committed and attempted to commit a class D felony or higher level crime, and acted as an accessory in the commission of a class D or higher level felony.

THIRD COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuse the defendant of the crime of **IDENTITY THEFT IN THE FIRST DEGREE**, in violation of Penal Law §190.80(1), committed as follows:

The defendant, in the County of New York and elsewhere, during the period from on or about October 8, 2007 to on or about July 31, 2008, knowingly and with intent to defraud assumed the identity of another person, to wit, The New York Times, by presenting herself as that other person, and by acting as that other person, and by using personal identifying information of that other person and thereby obtained money in an aggregate amount that exceeded two thousand dollars.

FOURTH COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuse the defendant of the crime of **IDENTITY THEFT IN THE SECOND DEGREE**, in violation of Penal Law §190.79(3), committed as follows:

The defendant, in the County of New York and elsewhere, during the period from on or about October 8, 2007 to on or about July 31, 2008, knowingly and with intent to defraud assumed the identity of another person, to wit, The New York Times, by presenting herself as that other person, and by acting as that other person, and by using personal identifying information of that other person and thereby committed and attempted to commit a felony and acted as an accessory to the commission of a felony.

ROBERT M. MORGENTHAU
District Attorney

# EXHIBIT - C

Plaintiff Julia Sorokin's
NY Pre-trial decision stating that
newspapers are "persons" who reside in
New York for the sake of jurisdiction.

212 258 3381

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:          PART 41
-----------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,    :
                                               Indictment Number 5257/08
          -against-                     :

JULIA SOROKIN (a/k/a VICTORIA GLEIZER,:
NANCY GOLD, KELLY ARMSTRONG,
MEREDITH TAYLOR,                        :  Decision & Order

                    Defendant.   :
-----------------------------------------x
ZWEIBEL, J.:

       Defendant's omnibus motion is disposed of as follows:

1.     The motion for inspection and/or dismissal of the Grand Jury minutes
       is granted to the extent that the Court has examined the Grand Jury
       minutes in camera and found the evidence before the Grand Jury to
       be legally sufficient, the instructions to be proper and the
       proceeding to be unimpaired.  The issues in the defendant's motion
       are straightforward, and disclosure of the Grand Jury minutes is not
       necessary to their resolution (see CPL § 210.30[3]).  Accordingly,
       the motion to dismiss the indictment is denied.

       Defendant also claims that this Court lacks jurisdiction to
       prosecute her for the crimes of Identity Theft in the First (3
       counts) and Second Degree (1 Count) as the geographic nexus needed
       to sustain any of these counts does not exist.  The Court disagrees.

       At common law and under the State Constitution, a defendant has the
       right to be tried in the county where the crime was committed unless
       the Legislature has provided otherwise (see People v. Zimmerman, 9
       N.Y.3d 421, 426 [2007]).  "So stringently was that rule applied, at
       common law, that where the alleged act was performed in part in one
       county and in part in another or others, venue was in neither county
       and prosecution could not be had at all" (People v. Zimmerman, 9
       N.Y.3d, at 427, quoting Matter of Murtagh v. Leibowitz, 303 N.Y.
       311, 316 [1951]).  The Legislature sought to correct that situation
       by enacting venue statutes that permit the prosecution of certain
       actions in other counties under certain very specific conditions
       (see People v. Zimmerman, 9 N.Y.3d, at 427; Matter of Murtagh v.
       Leibowitz, 303 N.Y., at 316).  CPL 20.40(4)(1) is one such exception.

       CPL 20.40 (4)(1)(iii) specifically states that "[a]n offense of
       identity theft or unlawful possession of personal identification
       information may be prosecuted ... in the county where the person
       whose personal identification information was used in the commission
       of the offense resided at the time of the commission of the
       offense".

When the bills preceding enactment of the statutes in the Penal law
dealing with identity theft were considered by the Legislature, the
Legislature acted while knowing that New York State was second only
to California in numbers of identity theft complaints, and that
existing statutes were inadequate to address a swiftly expanding
problem with serious financial consequences (see New York State
Assembly Mem. in Support, 2002 McKinney's Session Laws of N.Y., at
2093).  Recognizing identity theft as a major new criminal trend,
the New York State passed L. 2002, ch. 619, which created the new
crimes of identity theft and unlawful possession of personal
identification information.   The Legislature, cognizant of the
potential problem in prosecuting these crimes due to the
multijurisdictional nature of each element of the crime, also
amended the jurisdictional venue statute to permit identity theft
crimes to be prosecuted not only where the crime took place, but
also gave concurrent jurisdiction in any county where the person who
suffered financial loss or whose information was used resided at the
time the crime took place.

Despite the fact that the incidence of identity theft have grown
since the statutes were passed in 2002, jurisdiction does not appear
to have been an issue in any of the reported cases.  Thus, this
Court has no guidance from prior caselaw on the issue of whether New
York County has jurisdiction under the facts of this case.  However,
it is clear that this case of first impression is the type of
multijurisdictional nightmare that the legislature was attempting
to prevent by amending CPL 20.40(4)(1).

Based on a literal reading of CPL 20.40(4)(1), both the New York
Times and The Wall Street Journal are "persons" for jurisdiction
purposes (see Penal Law § 10.00[7]).  There was testimony before the
Grand Jury that both "reside[d]" in New York County during the
period in question.  Clearly, the papers personal information was
used as defendant used the names and e-mail addresses of both
entities respectively.

Specifically, as to the Wall Street Journal, defendant established
an online domain incorporating the name Wall Street Journal:
"wallstreetjournaladonline.com.  Through this domain, defendant
solicited advertisers by sending a letter offering promotional
advertising and editorial input.  The letter is signed by the
"Advertising Manager, wsj.com".  The authentic website of The Wall
Street Journal is "WSJ.com."  The invoice sent to the advertiser
bears The Wall Street Journal banner in large print on top of the
document.

As to the New York Times, defendant established several online
domains incorporating the name New Yok Times: "new
yorktimesadvertising.com", "nytimesadvertisingonline.com" and
"nytimesasonline.com".  Through each domain, defendant solicited

2

advertisers and distributed promotional material carrying the
signature of "Advertising Manager, nytimes.com." The authentic
website of The New York Times is "nytimes.com." The invoice sent
to the advertiser bears The New York Times banner in large print on
top of the document. Additionally, defendant endorsed two checks
made out to The New York Times and deposited them into her own
account.

The Court also notes that the People specifically charged the Grand
Jury as to jurisdiction (see People v. Zimmerman, 9 N.Y.3d 421, 426
[2007]).

Finally, the Court finds no merit to defendant's argument that she
did not steal any real person's identity. She stole the identity
of The New York Times and The Wall Street Journal both explicitly
and by implication. Accordingly, despite her aliases, defendant is
not a pseudonymous person. Defendant apparently forgets that a
company/corporation is considered a person under Penal Law
§10.00(7).

Accordingly, the evidence of venue/jurisdiction was sufficient.

2.   The motion for a Bill of Particulars and Discovery is granted to the
     extent supplied by the People. However, if defendant believes that
     any response to his demand for Discovery or his request for a Bill
     of Particulars is inadequate, he may move to reargue within 10 days
     of the service of a copy of this Pretrial Decision and Order. The
     People are directed to preserve all evidence including
     electronically recorded matter and physical exhibits seized by law
     enforcement officials or their agents, and all notes, records
     memoranda and reports prepared by law enforcement officials or their
     agents, including all recorded police communications.

3.   The People are reminded of their continuing obligation under Brady
     v. Maryland, 373 U.S. 83 (1963).

4.   The motion to reserve his right to make any and all further motions
     is denied.

                              ENTER:

                              Ronald A. Zweibel, J.S.C.

Dated: June 11, 2009

                                   3

# EXHIBIT - D

Wachtell, Lipton, Rosen & Katz the
new employers of Defendant Robert
Morgenthau press release naming the
Dow Jones and Company Inc. and the
Bancroft Family as clients of the law
firm during Plaintiff Julia Sorokin's
criminal prosecution.

# WACHTELL, LIPTON, ROSEN & KATZ

THE FIRM • PRACTICE • ATTORNEYS • RECRUITING • ABOUT THIS SITE

CORPORATE

LITIGATION

RESTRUCTURING
AND FINANCE

TAX

EXECUTIVE
COMPENSATION
AND BENEFITS

ANTITRUST

REAL ESTATE

A Preeminent Corporate Practice. Wachtell Lipton regularly handles many of the largest, most complex and demanding transactions in the United States and around the world. We counsel both public and private acquirors and targets, advising on a wide range of corporate matters, including

- U.S., Cross-Border and International Mergers and Acquisitions
- Private Equity and Strategic Investments
- Spin-offs and Split-ups
- Securities Offerings and Other Capital Raising Transactions

In addition, Wachtell Lipton is recognized as a leading firm for

- takeover defense
- shareholder activism
- corporate governance

We also counsel companies, and their boards of directors, on corporate disclosure, governance and policy issues.

Our clients include enterprises of virtually every nature, in the United States and around the world, including financial institutions, securities and private equity firms, and industrial, healthcare, pharmaceutical, technology, energy and media companies, including many *Fortune* 500 companies and other leading enterprises.

**Creativity in Service of Our Clients.** Wachtell Lipton has repeatedly contributed to major evolutions in corporate law in order to advance the interests of its clients. Among other things, Wachtell Lipton originated the so-called "poison pill"; structured the first cross-border "Morris Trust" transaction, between SmithKline Beckman and Beecham; and has been involved in the transactions giving rise to most of the landmark corporate governance decisions in Delaware, including the *Household, Revlon, Newmont Mining, Macmillan, Interco, Time Warner, QVC and IBP* decisions.

**Examples of Our Work.** Wachtell Lipton consistently ranks at the very top rank of legal advisors by transaction dollar volume, notwithstanding that all of our major competitors are significantly larger than we are. Over the past eight years, we have been the legal advisor on 7 of the 10 largest transactions in the United States and 5 of the 10 largest transactions

globally, as well as numerous other acquisition and restructuring transactions across many industries and of every description. Following are examples of some of our recent activity in a variety of areas.

**Recent major U.S. M&A representations have included:**

- Schering-Plough in its $41 billion acquisition by Merck
- Wyeth's board of directors in the pending acquisition of Wyeth by Pfizer for $68 billion
- Rohm and Haas in its $18.8 billion sale to Dow Chemical
- Bank of America in its $19 billion acquisition of Merrill Lynch
- The United States Department of the Treasury in connection with the conservatorship of, and $100 billion contingent equity investment in, each of Fannie Mae and Freddie Mac
- Wells Fargo in its $15 billion acquisition of Wachovia Corporation
- JPMorgan Chase in its acquisition of Bear Stearns
- Bancroft Family in News Corp.'s $5.6 billion acquisition of Dow Jones & Co.
- CenturyTel, Inc. in its $11.6 billion merger with EMBARQ
- BEA Systems in its $8.5 billion sale to Oracle
- ConocoPhillips in its $35 billion acquisition of Burlington Resources
- Delta Air Lines Inc. in its $3.6 billion merger with Northwest Airlines Corporation
- ALLTEL in its $27 billion LBO by Goldman Sachs and TPG and its $28.1 billion sale to Verizon Wireless
- Apollo Management and Texas Pacific Group in their $27.8 billion buyout of Harrah's Entertainment
- Goldman Sachs, AIG, Carlyle and Riverstone Holdings, in their $22 billion buyout of Kinder Morgan.

**Recent major cross-border or non-U.S. M&A representations have included:**

- Alcoa Inc in its $1.2 billion joint venture with Aluminum Corporation of China with respect to an investment in Rio Tinto plc
- Morgan Stanley in its $9 billion sale of equity securities to Mitsubishi UFJ Financial Group
- Acciona in its €42.5 billion acquisition of Endesa in partnership with Enel
- Bank of America in its $21 billion acquisition of ABN Amro's LaSalle Bank, in connection with the €70 billion acquisition of ABN Amro
- Iscar in its $5 billion acquisition by Berkshire Hathaway
- Unocal in its acquisition by Chevron for $16.6 billion, and in



JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Julia Sorokin
Louis A. Bravo

**(b)** County of Residence of First Listed Plaintiff    San Diego, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

JULIA SOROKIN, Pro Se      3895 Clairmont Drive, Suite B#210    Telephone: (858) 384-3528
LOUIS A. BRAVO, Pro Se     San Diego, CA 92117                  Facsimile: (858) 384-3581

## DEFENDANTS 2010 MAY 27 PM 2: 50

NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE; Cyrus Vance Jr. in his official capacity as DISTRICT ATTORNEY OF NEW YORK COUNTY; Robert Morgenthau in his former official capacity as DISTRICT ATTORNEY OF NEW YORK COUNTY; Joanne Siegmund in her official capacity as ASSISTANT DISTRICT ATTORNEY OF NEW YORK COUNTY; CITY OF NEW YORK; NEW YORK CITY POLICE DEPARTMENT; Terrance Haves in his official capacity NYPD Detective; CORRECTIONS DEPARTMENT OF NEW YORK CITY; NEW YORK STATE ATTORNEY GENERAL'S OFFICE

County of Residence of First Listed Defendant    New York, NY
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorney's (If Known)

**10 CV 1153 WQH      BLM**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☒ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):    42 U.S.C. § 1983

Brief description of cause:    This action is brought pursuant to 42 U.S.C § 1983 to redress violations of constitutional rights by the defendants.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 400,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE                          DOCKET NUMBER

DATE    May 26, 2010

SIGNATURE OF ATTORNEY OF RECORD    _Sorokin_

## FOR OFFICE USE ONLY

RECEIPT # 13997    AMOUNT $ 350    5/27/10 BH    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

Court Name: USDC California Southern
Division: 3
Receipt Number: CAS013997
Cashier ID: bhartman
Transaction Date: 05/27/2010
Payer Name: KNOX ATTORNEY SERVICES
------------------------------------
CIVIL FILING FEE
  For: SOROKIN AND BRAVO V NEW YORK
  Case/Party: D-CAS-3-10-CV-001153-001
  Amount:        $350.00
PAPER COPIES
  For: SOROKIN AND BRAVO V NEW YORK
  Amount:          $1.50
------------------------------------
CHECK
  Check/Money Order Num: 6881
  Amt Tendered:  $351.50
------------------------------------
Total Due:      $351.50
Total Tendered: $351.50
Change Amt:       $0.00


There will be a fee of $45.00
charged for any returned check